Gable et al., Appellees, *v.* Village of Gates Mills;
DaimlerChrysler Corporation, Appellant.

[Cite as *Gable v. Gates Mills,* 103 Ohio St.3d 449, 2004-Ohio-5719.]

(No. 2003–0476—Submitted March 30, 2004—Decided November 10, 2004.)

**MOYER, C.J.**

{¶ 1} Appellee David Gable ("Gable") was injured while in the front passenger seat of a Dodge Intrepid automobile driven by his wife. He suffered permanent neck and spinal injures, resulting in quadriplegia, when the vehicle slid off the road and into a guardrail, causing the air bag to deploy. At the time of the accident the vehicle was traveling at a speed of 12 to 21 miles per hour.

{¶ 2} Gable, his wife, and his daughter filed a complaint naming appellant, DaimlerChrysler, and others as defendants. He asserted that DaimlerChrysler had manufactured the Dodge Intrepid "in an unreasonably defective and unsafe condition in that the airbag system is capable of producing serious harm and death to vehicle occupants in proximity to the airbag during a collision." He further alleged that the "Intrepid and airbag component was defectively designed in that it was more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner," citing R.C. 2307.75(A)(1)(2).[1] Gable further claimed that the Intrepid was defective due to inadequate warnings, citing R.C. 2307.76. He claimed that the air bag struck him in the upper torso, head, and neck after the Intrepid left the roadway and that the spinal cord injury that left him paralyzed was the direct and proximate result of the design defects and inadequate warnings.

{¶ 3} Prior to trial Gable filed a motion in limine asking the court to instruct all defense counsel and witnesses not to mention or otherwise convey to the jury "any argument concerning Plaintiff David Gable's seatbelt nonuse during the accident of September 17, 1995 implying that such nonuse somehow constitutes a defense." Counsel for Gable acknowledged at a pretrial oral hearing held on the motion in limine that David Gable was not wearing his seat belt when the accident occurred, stating: "Obviously, the fact that David Gable is unbelted will come into this case. It's a function of what happened. It's the way the event will be explained. But its use and characterization as a defense is what's at issue in this motion."

---

1. {¶ a} R.C. 2307.75 provides:

{¶ b} "(A) * * * [A] product is defective in design or formulation if * * *

{¶ c} "* * *

{¶ d} "(2) It is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner."

{¶ 4} At the hearing, the court observed that DaimlerChrysler had pled assumption of the risk as a defense, stating:

{¶ 5} "[W]hile the seat belt usage in and of itself is not a defense to the * * * claim of injury * * *, assumption of the risk means that this defendant [sic] David Gable understood quite clearly that if he didn't wear his seatbelt and this air bag deployed at whatever rate the plaintiffs are claiming it deployed at that this gentleman was going to be injured.

{¶ 6} "* * * [W]hile this Court realizes that this is a difficult burden for the defendants to shoulder, that burden is certainly theirs to assume and the Court is going to deny the motion in limine as to these seat belt nonusage [sic]. It can be used for a limited purpose and a limited purpose only and I think defense counsel understands what that purpose is."

{¶ 7} In its entry denying the motion, the court ruled that evidence as to David Gable's failure to use a seat belt would be "permitted as to limited circumstances and for a limited purpose." The court did not specify in its entry what those limited circumstances and limited purpose would be.

{¶ 8} The cause was tried to a jury, which returned a verdict finding that DaimlerChrysler was not liable.

{¶ 9} On appeal Gable argued that "[i]n a products liability case based on R.C. § 2307.75, it is prejudicial error to allow the manufacturer to introduce irrelevant evidence of an ideal standard of consumer conduct," i.e., evidence that David Gable was not wearing his seat belt at the time of the accident. The court of appeals agreed, vacated the jury's verdict and remanded the cause for a new trial. It observed that the jury had heard testimony regarding Gable's failure to wear his seat belt, "which testimony understandably implied that he was in some manner comparatively negligent for his injuries." The court concluded that "the introduction of seat belt evidence was highly prejudicial and without merit under the facts and evidence presented at trial."

{¶ 10} The cause is before us on discretionary review. We reverse the judgment of the court of appeals and reinstate the jury verdict in favor of the defendant because Gable did not properly preserve for appellate review his contention that the trial court erred in the introduction of evidence and in allowing defense counsel to make improper statements throughout the trial.

{¶ 11} R.C. 4513.263 is Ohio's mandatory seat belt law. It provides, with certain exceptions, that front-seat passengers in an automobile must wear "all of the available elements of a properly adjusted occupant restraining device," including seat belts. R.C. 4513.263(B)(3) and 4513.263(A)(2).

452

{¶ 12} In addition, the statute provides a legislative resolution to previously disputed issues concerning the admissibility of evidence of an auto-accident victim's nonuse of an available seat belt. R.C. 4513.263 states:

{¶ 13} "(F)(1) *Subject to division (F)(2) of this section,* the failure of a person to wear all of the available elements of a properly adjusted occupant restraining device, * * *, in violation of division (B) of this section, shall not be considered or used as evidence of negligence or contributory negligence, shall not diminish recovery for damages in any civil action involving the person * * *; and shall not be admissible as evidence in any civil or criminal action involving the person other than a prosecution for a violation of this section.

{¶ 14} "(F)(2) If, at the time of an accident involving a passenger car equipped with occupant restraining devices, any occupant of the passenger car who sustained injury or death was not wearing an available occupant restraining device, * * * then, *consistent with the Rules of Evidence,* the fact that the occupant was not wearing the available occupant restraining device * * * is admissible in evidence in relation to any claim for relief in a tort action to the extent that the claim for relief satisfies all of the following:

{¶ 15} "(a) It seeks to recover damages for injury or death to the occupant.

{¶ 16} "(b) The defendant in question is the manufacturer, designer, distributor, or seller of the passenger car.

{¶ 17} "(c) The claim for relief against the defendant in question is that the injury or death sustained by the occupant was *enhanced or aggravated by some design defect in the passenger car or that the passenger car was not crashworthy.*" (Emphasis added.)

{¶ 18} Thus, R.C. 4513.263 states, as a general rule, that evidence of nonuse of seat belts is inadmissible in a civil action. However, an exception exists: Evidence of nonuse of seat belts may be admitted where an automobile accident victim seeks damages from a passenger car manufacturer, designer, distributor, or seller under the theory that his or her injuries were enhanced or aggravated by a design defect, or that the vehicle he or she was occupying was not crashworthy. The statute provides, however, that even in an enhanced- or aggravated-injury case or a crashworthiness case, evidence of nonuse of seat belts may be admitted only to the extent admission is consistent with the Rules of Evidence.

{¶ 19} Therefore, under Ohio's mandatory seat belt statute, as a general rule, the failure of a person to have worn a seat belt, in violation of the statute, may not be considered or used as evidence of negligence or contributory negligence, may not diminish recovery for damages in any civil action involving the person, and is not admissible as evidence in any civil or criminal action involving the

person other than a prosecution for a violation of R.C. 4513.263. R.C. 4513.263(F)(2), however, provides an exception to the general rule established in R.C. 4513.263(F)(1) against admissibility of seat belt nonuse: Consistent with the Rules of Evidence, the fact that a person was not wearing a seat belt is admissible in evidence in relation to any claim for damages against a manufacturer, designer, distributor, or seller of a passenger car asserting that injury or death was enhanced or aggravated by some design defect in a passenger car or that a passenger car was not crashworthy.

{¶ 20} The parties do not dispute that DaimlerChrysler was the manufacturer of the Dodge Intrepid involved in Gable's accident or that Gable seeks to recover damages for his injuries suffered in the accident. Thus, the threshold issue before us is whether Gable sought to recover damages under a theory of enhanced or aggravated injury or under a theory that the Dodge Intrepid was not crashworthy. If so, pursuant to R.C. 4513.263(F)(2), evidence that Gable was not wearing his seat belt was admissible, but only to the extent consistent with the Rules of Evidence.

{¶ 21} The Revised Code does not define "enhanced" or "aggravated" injuries for purposes of R.C. 4513.263, nor does it define "crashworthy." We therefore determine whether the General Assembly intended that an action like Gable's would fall within the scope of Subsection (F)(2) of the seat belt law.

{¶ 22} The General Assembly enacted R.C. 4513.263(F)(2) (then [G][2] ) in 1987, approximately six years after our decision in *Leichtamer v. Am. Motors Corp.* (1981), 67 Ohio St.2d 456, 21 O.O.3d 285, 424 N.E.2d 568. Am.Sub.H.B. No. 1, 142 Ohio Laws, Part I, 1750. *Leichtamer* is the seminal Ohio case recognizing a cause of action for enhanced or aggravated injury suffered in a motor vehicle accident. We there recognized that a "cause of action for damages for injuries caused *or enhanced* by a product design defect will lie in strict liability in tort." Id. at paragraph one of the syllabus.

{¶ 23} In *Leichtamer* two persons sued the manufacturer of a Jeep CJ–7 that pitched forward and landed upside down while being driven down a steep hill. The plaintiffs, passengers in the vehicle, acknowledged that the accident itself was caused by the negligence of the driver—not any defect in the Jeep. They sought to recover from the manufacturer of the Jeep based on a claim that their injuries were "substantially enhanced, intensified, aggravated, and prolonged" by a defectively designed roll bar on the vehicle. 67 Ohio St.2d at 458, 21 O.O.3d 285, 424 N.E.2d 568. They testified that they had seen commercials causing them to believe that the roll bar would protect them if the vehicle landed on its top. Id. at 460, 21 O.O.3d 285, 424 N.E.2d 568.

{¶ 24} In affirming judgment for the plaintiffs, the majority opinion observed: "In this case, appellees seek to hold appellants liable for injuries 'enhanced' by a

design defect of the vehicle in which appellees were riding when an accident occurred. *This cause of action is to be contrasted with that where the alleged defect causes the accident itself.* Here the 'second collision' is that between appellees and the vehicle in which they were riding." (Emphasis added.) 67 Ohio St.2d at 462, 21 O.O.3d 285, 424 N.E.2d 568. Similarly, the court observed that "[s]trict liability in tort has been applied to design defect 'second collision' cases," and that "[w]hile a manufacturer is under no obligation to design a 'crash proof' vehicle, *Larsen v. General Motors* (C.A.8, 1968), 391 F.2d 495, an instruction may be given on the issue of strict liability in tort if the plaintiff adduces sufficient evidence that an unreasonably dangerous product design proximately caused or enhanced plaintiff's injuries in the course of a foreseeable use." Id. at 465, 21 O.O.3d 285, 424 N.E.2d 568.

{¶ 25} Two justices dissented from the majority's adoption of strict liability in design-defect cases involving motor vehicles involving a second collision, arguing that principles of negligence should govern. Id., 67 Ohio St.2d at 478, 21 O.O.3d 285, 424 N.E.2d 568 (Holmes, J, dissenting). Justice Holmes characterized the *Leichtamer* case as a crashworthiness case and advocated the rule set forth in *Larsen v. Gen. Motors Corp.* (C.A.8, 1968), 391 F.2d 495. Id.

{¶ 26} In *Larsen,* often recognized as originating the concept of crashworthiness, a plaintiff was injured when the steering assembly came out of place and struck the plaintiff in the head. The court recognized that the accident itself had not been caused by any defect attributable to the manufacturer. Nevertheless, the court acknowledged that the manufacturer should be liable "for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design." Id. at 503.

{¶ 27} For purposes of this case it is significant that both the majority and dissenting opinions in *Leichtamer* variously described the case before it as involving "enhanced" injuries, or "crashworthiness"—the very language used by the General Assembly in R.C. 4513.263(F)(2)(c). Indeed, courts routinely use the terms "crashworthiness," "injury enhancement," and "second collision" interchangeably. Roth, The Florida Supreme Court Needs a Second Look at Second Collision Motor Vehicle Cases (Apr. 2004), 78 Fla. B.J. 20, fn. 2 (citing *Caiazzo v. Volkswagenwerk, A.G.* (C.A.2, 1981), 647 F.2d 241, 243, fn. 2; *Seese v. Volkswagenwerk, A.G.* (C.A.3, 1981), 648 F.2d 833, 838, fn. 7). Similarly, Black's Law Dictionary defines "crashworthiness doctrine" as follows: "The principle that the manufacturer of a product will be held strictly liable for injuries occurring in a collision, even if the collision results from an independent cause, to the extent that a defect in the product causes injuries above and beyond those that would have occurred in the collision itself.— Also termed *second-collision doctrine;*

*second-impact doctrine."* (Emphasis sic.) Black's Law Dictionary (7th Ed.1999) 374.

{¶ 28} We therefore hold that for purposes of applying R.C. 4513.263(F)(2), a claim for injury or death is based on a theory of enhanced or aggravated injury, or crashworthiness, when the plaintiff asserts that because of a design defect his or her injuries were more severe than they would otherwise have been because of a second collision between the plaintiff and a component of the passenger car, even where the accident was not caused by a design defect or other product defect.

{¶ 29} Gable made such a crashworthiness claim in his action against Daimler-Chrysler. He asserted that his injuries were caused by a second collision of his body with the airbag, a component of the car, and that the airbag was defectively designed in that it was dangerous to occupants to a degree not expected by an ordinary consumer. He acknowledged as fact that the vehicle did not slide off the road and into the guardrail because of a design defect of the car. Indeed Gable has in effect conceded in this court that his case is a second-collision case, observing that the collision of the Intrepid with the guardrail "did not generate enough force to produce the explosion in David's neck" and that the "air bag was the cause of David Gable's neck injury." Therefore, his claims are analogous to those made in *Leichtamer* and fall within the scope of R.C. 4513.263(F)(2). We reject Gable's implied contention that the airbag can be considered to be a defective product somehow separate from the Intrepid itself, thereby differentiating his claim from a crashworthiness claim.

{¶ 30} Accordingly, evidence of Gable's nonuse of the seat belt provided in the automobile was admissible to the extent consistent with the Rules of Evidence. The trial court could, within its sound discretion, admit that evidence if, and only if, admission of that evidence was consistent with the Rules of Evidence.

{¶ 31} In his brief, Gable points to numerous statements made both by witnesses and defense counsel that he contends illustrate DaimlerChrysler's pervasive use of seat belt evidence to destroy the jury's ability to rationally evaluate the evidence. Indeed, Gable has appended to his brief an index of over 80 statements, made either by witnesses or counsel, that he contends illustrate "some of DaimlerChrysler's improper use of seat belt evidence at trial." He argues that the Court of Appeals properly remanded this case for a new trial because DaimlerChrysler did not use seat belt evidence for any relevant purpose but rather to demonstrate negligence on his part.

{¶ 32} Gable claims that contributory negligence may not be used as a defense to a products-liability claim. He further argues that the defense could not introduce the fact of David's nonuse of the seat belt to demonstrate the cause of his injury. Although Gable does not specify which of the Rules of Evidence was

thereby violated, we infer that he contends that admission of this evidence contradicted Evid.R. 402[2] or 403.[3]

{¶ 33} Whether the trial court committed reversible error in allowing those statements is not, however, properly before this court, as Gable did not contemporaneously object to them at trial. When asked at the oral argument of this case whether Gable had asked for a limiting instruction to guide the jury as to how it might consider the evidence of Gable's nonuse of his seat belt, counsel acknowledged that he had not. Instead, Gable's counsel suggested that the pretrial motion in limine sufficed as a request for a limiting instruction.

{¶ 34} Ohio law is clear, however, that a ruling on a motion in limine may not be appealed and that objections to the introduction of testimony or statements of counsel must be made during the trial to preserve evidentiary rulings for appellate review. The law was well summarized in *Dent v. Ford Motor Co.* (1992), 83 Ohio App.3d 283, 286, 614 N.E.2d 1074:

{¶ 35} "A motion *in limine* is commonly used as a tentative, precautionary request to limit inquiry into a specific area until its admissibility is determined during trial. *Riverside Methodist Hosp. Assn. v. Guthrie* (1982), 3 Ohio App.3d 308, 310, 3 OBR 355, 357, 444 N.E.2d 1358, 1361; see, also, *State v. Grubb* (1986), 28 Ohio St.3d 199, 201–202, 28 OBR 285, 288, 503 N.E.2d 142, 145. As a tentative, interlocutory, precautionary ruling, '* * * finality does not attach when the motion is granted.' *Id.* at 202, 28 OBR at 288, 503 N.E.2d at 145. ' "By its very nature, * * * its grant cannot be error. It is not a ruling on evidence. It adds a procedural step prior to the offer of evidence." ' (Citations omitted.) *State v. Maurer* (1984), 15 Ohio St.3d 239, 259, 15 OBR 379, 396, 473 N.E.2d 768, 787. As such, ' "* * * the ruling [o]n a motion *in limine* does not preserve the record on appeal[;] * * * [a]n appellate court need not review the propriety of such an order unless the claimed error is preserved by [a timely objection] * * * when the issue is actually reached [during the] * * * trial." ' (Emphasis deleted and citation omitted.) *Grubb, supra,* 28 Ohio St.3d at 203, 28 OBR at 289, 503 N.E.2d at 146." Quoting Palmer, Ohio Rules of Evidence Rules Manual (1984) 446.

{¶ 36} We acknowledge that Fed.R.Evid. 103(a), as amended effective December 1, 2000, provides, "Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Similarly,

---

2. Evid.R. 402 provides, "Evidence which is not relevant is not admissible."

3. Evid.R. 403(A) provides that relevant evidence is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

Uniform Rule of Evidence 103 was revised in 1999 to add subdivision (c), which reads, "If the court makes a definitive pretrial ruling on the record admitting or excluding evidence, a party need not renew an objection or offer of proof at trial to preserve a claim of error for appeal." Ohio's version of the same rule, however, has not been amended to change existing law precluding direct review of rulings on motions in limine or relieving counsel of the duty of making a contemporaneous or a continuing objection. To the contrary, Ohio Evid.R. 103 continues to provide:

{¶ 37} "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

{¶ 38} "(1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent from the context * * *."

{¶ 39} Moreover, even if this cause were governed by Fed.R. Evid. 103, or Uniform Rule of Evidence 103, a contemporaneous objection would likely still have been required at trial for want of a definitive trial court ruling on Gable's motion in limine. The trial court's ruling on Gable's pretrial motion that evidence of nonuse of a seat belt would be "permitted as to limited circumstances and for a limited purpose" and its observation "I think defense counsel understands what that purpose is" cannot be characterized as a definitive pretrial ruling.

{¶ 40} Similarly, "Except where counsel, in his opening statement and closing argument to the jury, grossly and persistently abuses his privilege, the trial court *is not required to intervene sua sponte* to admonish counsel and take curative action to nullify the prejudicial effect of counsel's conduct. Ordinarily, in order to support a reversal of a judgment on the ground of misconduct of counsel in his opening statement and closing argument to the jury, it is necessary that a proper and timely objection be made to the claimed improper remarks so that the court may take proper action thereon." (Emphasis sic.) *Snyder v. Stanford* (1968), 15 Ohio St.2d 31, 44 O.O.2d 18, 238 N.E.2d 563, paragraph one of the syllabus, superseded by rule on other grounds as stated in *King v. Branch Motor Express Co.* (1980), 70 Ohio App.2d 190, 197, 24 O.O.3d 250, 435 N.E.2d 1124.

{¶ 41} We have reviewed the record and have found only isolated instances where counsel for the Gables properly objected to a statement that it now challenges as error. The vast majority of statements presented to us by Gable as constituting grounds for reversal of the jury's verdict were left unchallenged by Gable's counsel at trial. Even where counsel did object, the grounds of the objection were, on one occasion, different from those raised in this court, and on another occasion resulted in the trial court sustaining the objection, and in fact instructing the jury to disregard the answer. We do not find reversible evidentiary error on this record.

{¶ 42} We further acknowledge that, in future cases, issues may well arise concerning the appropriate use of evidence of nonuse of seat belts in crashworthiness cases. Pursuant to R.C. 4513.263(F)(2), a trial court must resolve those issues by applying the Rules of Evidence. Resolution of challenges to the admissibility of evidence, however, should always be made in the first instance by the trial court.

{¶ 43} This court will not reverse a jury verdict in a civil action based on the assertion of plain error where no timely objection was made except in the "extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 122–123, 679 N.E.2d 1099. The case before us is not such a case.

{¶ 44} The judgment is reversed and the cause is remanded with instructions that the judgment of the trial court based upon the jury's verdict in favor of DaimlerChrysler be reinstated.

Judgment reversed.

RESNICK, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

F.E. SWEENEY, J., dissents.

PFEIFER, J., dissents.

---

**PFEIFER, J., dissenting.**

{¶ 45} I dissent from the majority's holding for three reasons: (1) appellants never argued waiver by the appellee for failure to object to seat belt evidence, (2) appellees did, in fact, object to the introduction of seat belt evidence, and (3) this court has long held that a trial court should, sua sponte, admonish offending parties for particularly improper closing arguments, and failure to do so should result in a new trial.

{¶ 46} The majority finds in favor of the appellant for a reason not raised by the appellant as an assignment of error or a proposition of law. Any failure of appellee to object to seat belt testimony was not raised as error by appellant in oral argument or in its brief to this court. It was raised neither in appellant's jurisdictional motion, which was originally denied, nor in its motion for reconsideration of its jurisdictional motion. It was not raised as a response to appellee's arguments in the court of appeals. It was not raised in appellant's application for rehearing in the court of appeals. The issue of appellee's alleged failure to

properly object to seat belt testimony has never been raised by appellant at any level. I would hold that DaimlerChrysler waived the issue.

{¶ 47} Of course, the reason that DaimlerChrysler never raised failure to object as an issue might simply be that there is no issue. DaimlerChrysler's appellate counsel was also its trial counsel, and that counsel stands in the best position to know whether a particular issue was contested at the trial level. Its failure to raise the issue of the lack of an objection is telling. Indeed, even the majority acknowledges that there were "isolated instances where counsel for the Gables properly objected to a statement that it now challenges as error."

{¶ 48} We cannot fault Gable for the failure to object at every turn. This court has stated that objecting too much can disrupt the flow of a trial and detract from a party's case:

{¶ 49} "Because '[o]bjections tend to disrupt the flow of a trial, [and] are considered technical and bothersome by the fact-finder,' Jacobs, Ohio Evidence (1989), at iii-iv, competent counsel may reasonably hesitate to object in the jury's presence." *State v. Campbell* (1994), 69 Ohio St.3d 38, 53, 630 N.E.2d 339.

{¶ 50} This is especially true in the case at bar, where Gable's failure to wear a seat belt was a part of his own case. Gable's objecting to testimony that he himself was admitting could have easily confused a jury. However, Gable made his position clear to the judge in his motion in limine—Gable's failure to wear a seat belt could not be a defense for DaimlerChrysler.

{¶ 51} The trial judge ruled that evidence of failure to use a seat belt would be allowed for a limited purpose—the proof of the defense of assumption of the risk. The court stated:

{¶ 52} "Concerning David Gable's seat belt usage or nonusage, and under the circumstance I think that we have indeed stipulated that Mr. Gable was not wearing a seat belt at the time of the accident, I—how we—we put a name on this case, is it a crash worthiness case? Well, maybe it is and maybe it isn't. But the argument, the consumer expectation test as it relates to the air bag which plaintiff propounds is indeed compelling, but I must also take a look at defense's argument concerning assumption of the risk. And while I understand that that is going to be a difficult burden to prove given—given the circumstances, the defendant is willing to shoulder that burden.

{¶ 53} "And, therefore, while the seat belt usage in and of itself is not a defense to the accident or—excuse me—to the claim of injury under these circumstances, the defense's argument the way I see it—and I understand I'm boiling it down to simple terms—but in simple terms, assumption of the risk means that this defendant David Gable understood quite clearly that if he didn't wear his seat

belt and this air bag deployed at whatever rate the plaintiffs are claiming it deployed at that this gentleman was going to be injured.

{¶ 54} "Now I—while this Court realizes that this is a difficult burden for the defendants to shoulder, that burden is certainly theirs to assume and the Court is going to deny the motion in limine as to these [sic] seat belt nonusage. It can be used for a limited purpose and a limited purpose only and I think defense counsel understands what that purpose is."

{¶ 55} Thus, the trial court specifically failed to determine that the case involved crashworthiness and allowed testimony of nonuse of a seat belt only as part of the assumption-of-the-risk defense. However, the trial court directed a verdict against DaimlerChrysler at the close of testimony on that defense. Evidence of seat belt nonuse had been admitted to go to the proof of that defense only. By the time of DaimlerChrysler's closing argument, that defense was dead.

{¶ 56} The court's directed verdict should have prevented DaimlerChrysler from raising the issue in closing argument—but instead, DaimlerChrysler plowed forward, blaming Gable's injuries on his failure to wear a seat belt. Given Gable's theory of recovery, it was a preposterous defense. Gable argued that he was injured because he was not wearing a seat belt and that DaimlerChrysler had failed to warn him that an air bag itself could injure him if he did not wear a seat belt. DaimlerChrysler's response: "Aha! But he was not wearing a seat belt!"

{¶ 57} Despite the fact that the trial judge never ruled that the case was about crashworthiness, and despite the fact that the judge's narrow window allowing testimony of nonuse of a seat belt had been slammed shut, DaimlerChrysler's closing argument made the case all about Gable's failure to wear a seat belt. From the beginning of the closing argument ("The problem is, this is a tragedy that was so easily preventable. If any one of us could go back in time, we would do something very simple that would make sure that this never happened. We would all say buckle up, and then all of this would be for naught and none of this would have ever occurred") to the end ("Some day, some day we'll be able to save everyone's life. Some day almost everyone will walk away from an accident. All we need is a little help"), DaimlerChrysler blamed Gable's injuries on his failure to wear a seat belt.

{¶ 58} The failure of a party to object does not give an opposing party carte blanche to go forward with an inappropriate closing argument. As this court stated in *Snyder v. Stanford* (1968), 15 Ohio St.2d 31, 37, 44 O.O.2d 18, 238 N.E.2d 563, "under proper circumstances, a trial court is bound, *sua sponte,* to admonish counsel and take curative action to nullify the prejudicial effect of counsel's conduct."

{¶ 59} In *Jones v. Macedonia–Northfield Banking Co.* (1937), 132 Ohio St. 341, 8 O.O. 108, 7 N.E.2d 544, paragraph three of the syllabus, this court held that prejudicial closing arguments can be cause for the granting of a new trial:

{¶ 60} "Argument to the jury, in which counsel charges opposing parties with framing or fixing up their defense by perjury arranged for or suborned, is improper unless there is evidence warranting the course pursued; and where counsel grossly abuses his privilege by persisting in making such unfounded charges to the manifest prejudice of opposing parties, it is the duty of the court to interfere, admonish offending counsel and instruct the jury to disregard the improper utterances, and a failure to do so is ground for a new trial."

{¶ 61} Granted, in this case counsel for DaimlerChrysler did not suggest that anyone had committed perjury. However, its argument on failure to use a seat belt was disingenuous, contrary to prior rulings of the court, contrary to statutory law, and highly prejudicial to the plaintiffs. It obscured the issue of fact that the jury was called on to determine—whether the DaimlerChrysler air bags were more dangerous than an ordinary consumer would expect and whether Daimler-Chrysler adequately warned consumers of the dangers that air bags posed to unrestrained passengers.

{¶ 62} The issue of the admissibility of seat belt nonuse is not an issue that Gable's counsel invented by picking through the trial record. The issue was omnipresent and imbued the trial, and each party's position was clear. Neither party disputes that. Thus, this court should decide the issue, rather than decide the case based on one party's failure to object often enough.

{¶ 63} This court originally declined jurisdiction of this case. This court certainly should not go to the extraordinary lengths to overrule itself and decide to accept jurisdiction merely to opine on the sufficiency of a party's objections. If it does, the case was improvidently accepted on reconsideration.

---

John F. Norton and Richard C. Alkire, for appellees.

Sutter, O'Connell, Mannion & Farchion Co., L.P.A., Lawrence A. Sutter and Christina J. Marshall, for appellant DaimlerChrysler Corporation.