[Cite as *Lipp v. Lipp*, 2011-Ohio-5759.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| LARA LYNN LIPP, | ) | |
| | ) | CASE NO.  10 CO 38 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| CARL LEE LIPP, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:      Civil Appeal from Common Pleas Court,
                               Domestic Relations Division, Case No.
                               08DR248.


JUDGMENT:                      Reversed and Modified in part; Affirmed
                               in part.


APPEARANCES:
For Plaintiff-Appellee:        Attorney James Hartford
                               91 West Taggart Street
                               P.O. Box 85
                               East Palestine, Ohio  44413

For Defendant-Appellant:       Attorney Dominic Frank
                               16233 Saint Clair Avenue
                               East Liverpool, Ohio  43920


JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro


                               Dated:  November 2, 2011

VUKOVICH, J.

¶{1} Defendant-appellant Carl Lee Lipp appeals from certain aspects of the divorce decree entered by the Columbiana County Common Pleas Court. Appellant contends that the division of marital assets and debts was inequitable as it essentially credited plaintiff-appellee Lara Lynn Lipp twice for the same funds. As explained in detail infra, we agree that the portion of the asset division dealing with the house is unreasonable and thus constitutes an abuse of discretion. Accordingly, we hereby modify the division of marital property and amend the judgment so that the husband is only obligated to pay the wife $23,134.50 for her share of the residence, which represents her separate property contribution plus half of the marital equity in the residence minus the loan for her vehicle which the husband incurred.

¶{2} Appellant also argues that the magistrate abused its discretion in refusing to consider his appraisal and that it was an abuse of discretion to find it in the child's best interests for the wife to be named the residential parent. We conclude that the trial court's decision on these matters was reasonable and thus not an abuse of discretion.

¶{3} For the reasons expressed below, the judgment of the trial court is hereby reversed and modified in part, and affirmed in part.

## STATEMENT OF THE CASE

¶{4} The parties were married in 2001, had a child in 2007, and filed for divorce in 2008. The case was tried before a magistrate. Both parties asked to be named residential parent. The parties also disputed the allocation of monetary rights arising from real estate and the distribution of debts. Prior to marriage, the wife owned a residence on Detwiler Road in Beaver Township and the husband owned a residence on Waterford Road in East Palestine. At trial, the parties contested the marital versus separate portions of these properties.

¶{5} On May 21, 2010, the magistrate issued a decision allocating the parties' assets and debts. The magistrate also named the wife the residential parent and granted the husband expanded companionship. The husband filed timely objections.

¶{6}   On October 15, 2010, the trial court overruled most of the objections. The court did however amend a portion of the property division by reducing the husband's obligation to the wife by $6,242.50 due to the magistrate's failure to consider the marital reduction of debt on the wife's Detwiler Road property.   The husband filed timely notice of appeal.

<u>ASSIGNMENT OF ERROR NUMBER ONE</u>

¶{7}   Appellant's first assignment of error provides:

¶{8}   "THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF THE APPELLANT-DEFENDANT IN DIVIDING THE MARITAL ASSETS AND DEBTS UNEQUALLY."

¶{9}   A trial court must determine what property is separate and what property is marital.  R.C. 3105.171(B).  The court must then divide that property equitably.  Id. In dividing marital property, the court must divide the property equally unless such a division would be inequitable.   R.C. 3105.171(C)(1).   See, also, *Cherry v. Cherry* (1981), 66 Ohio St.2d 348 (a potentially equal division of the marital property is the starting point of the trial court's analysis).  In determining the equitable division of the marital property, the court must consider "all relevant factors," including the following statutory factors:   the duration of the marriage; the assets and liabilities of the spouses; the desirability of awarding the family home to the spouse with custody; the liquidity of the property to be distributed; the economic desirability of retaining an asset intact or in retaining the interest in an asset; the tax consequences of the property division as regards the respective awards to be made to each spouse; the costs of sale and whether it is necessary that an asset be sold to effectuate an equitable distribution of property; any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses; and any other factor the court expressly finds to be relevant and equitable.  R.C. 3105.171(F).

¶{10}  The husband complains that the wife received a vehicle free and clear of any debt even though the husband incurred approximately $29,491 in debt on the vehicle.  (Apt. Br. at 17).  However, this statement is not correct.  The $29,491 figure was subtracted from the amount the wife was awarded in the property division.

¶{11}  Next, the husband points to an error in the arithmetic in the portion of the trial court's judgment that amended the magistrate's decision to give him credit for

marital funds used to reduce debt on the wife's Detwiler property. The trial court noted that a 2004 mortgage in the amount of $103,444[1] was reduced to $101,210 by the time of sale and thus attributed the $2,234 reduction to marital funds. The court also found that an $85,000 equity line of credit was reduced during the marriage to $74,385 and thus attributed $10,615 to marital funds. The trial court thus concluded that the marital portion of the $60,000 profit on the sale of the wife's Detwiler property was $12,849 ($2,234 plus $10,615). In dividing this marital portion equally, the court stated that half of $12,849 is $6,242.50. As the husband points out, half is actually $6,424.50. We recognize this typographical, transpositional error and shall utilize the proper figure in any subsequent calculations.

¶{12} Next, appellant states that the court's property award allows the wife to "double dip." That is, appellant urges that the wife was given back her separate investment in the Waterford residence during the court's discussion of the Detwiler transaction, but then, when the court discussed the Waterford residence, the court ignored the fact that it had already credited her back her separate property invested in the Waterford residence. For the following reasons, this argument has merit.

¶{13} The Waterford property was found to be worth $200,000, and the court found that the $82,000 equity line of credit should be subtracted before determining the marital equity. Contrary to a suggestion by the husband, placing this obligation upon him is proper since he is retaining the residence. This leaves $118,000 in total equity.

¶{14} The trial court subtracted $59,900 for appellant's separate contribution, leaving $58,100. The court found this to represent the marital equity and thus gave the wife half of $58,100, without acknowledging that the court had already ordered the husband to pay the wife for her separate property investment in Waterford under its Detwiler Road discussion a few paragraphs earlier in the judgment.

¶{15} This is not equitable as the wife was credited more than once for the same funds. Essentially, the Detwiler Road discussion should have been a method of

---

[1] We note that the statement of facts in appellant's brief mentions that the court did not take into account that the mortgage was originally $108,000. However, this was the amount from 1999, more than two years prior to the marriage. He cites to no evidence on the amount in mid-2001 or the source of the reduction from 1999 to 2004. In any event, his objections below focus only on the failure to credit him with the reduction from $103,400 to $101,210. Thus, besides the fact that he does not place this contention within his assignment of error as required by App.R. 12(A)(1)(b), (2) and 16(A)(7), he also waived the argument in any event under Civ.R. 53(D)(3)(b).

tracing how much of a separate property interest she had in the Waterford property; a mere way to arrive at the figure to plug into the Waterford Road calculation. It should not have resulted in an award itself as the award itself later comes out of the Waterford Road calculation.

¶{16} The correct calculation is as follows. As aforementioned, the trial court found that of the $60,000 realized from the sale of the wife's separate Detwiler Road property and then placed into the Waterford Road property, $12,849 was marital. This leaves $47,151 as the wife's separate property interest in the Waterford property.

¶{17} We then insert this amount into our calculations concerning the Waterford Road property. In order to arrive at marital equity, the separate property contributions of both parties, which total $107,051, must be subtracted from the $118,000 worth of total equity. This leaves $10,949 in marital equity to split evenly, which is $5,474.50 each.

¶{18} Thus, the wife is to receive her $47,151 separate property investment back plus $5,474.50 in marital equity on the Waterford residence for a total of $52,625.50. As the trial court determined, her award must be reduced by the $29,491 for her vehicle loan that was incurred by appellant. This leaves a total payout to the wife of $23,134.50.

¶{19} As such, we reverse the division of marital property and amend the trial court's judgment so that the husband shall pay the wife $23,134.50, which amount represents her interest in the Waterford property (traced back from her interest in the Detwiler property) minus her vehicle loan.

¶{20} The next issue is whether the court erred in failing to credit the husband for a $14,000 cognovit note he owes to his sister which he states went toward renovations to the Waterford Road house. Appellant claims that neither the magistrate's decision nor the trial court's entry discussed these matters. However, appellant testified that his sister loaned him $14,000 in 2001 and $12,000 in 2005, and produced cognovit notes signed by only him. (Tr. 32). Later, he testified that this money was used for other farm properties, which he claimed and the magistrate agreed were his separate premarital property. (Tr. 501-504). Likewise, the magistrate specified in its decision that appellant borrowed $26,000 from his sister for improvements to farm land with rental structures which property was awarded to him

as his separate property and that this was appellant's separate debt. Appellant testified that he was not opposed to the court assigning him the debt owed to his father and sister and noted that he used part of the cognovit note to pay for the septic system on his separate rental property and the rest to buy farm equipment. (Tr. 487-487, 503-504, 557-558, 567). Thus, the matter was considered, and the resulting decision is not an abuse of discretion. In any event, the husband failed to object on this ground, and thus, he waived this argument on appeal. See Civ.R. 53(B)(3)(b)(ii) (objections shall be specific and state with particularity all grounds for objection), (iv) (failure to object waives the right to assign such error on appeal).

¶{21} The husband also argues that the court erred in failing to credit him $4,000 for selling a piece of this separate property farmland in order to pay for renovations at the Waterford Road house. The testimony was that the husband sold five acres of his separate property to his nephew for approximately $6,000, that his nephew paid him $2,000 cash, and that the nephew satisfied the balance by doing labor at the Waterford Road house. (Tr. 442, 505). The nephew testified that he pressure-washed and painted some buildings. The husband testified that the work was done at the Waterford Road house; the nephew stated that it was performed at "the farm". It was for the court to decide if this was done as payment for the property or as a favor, if the services were performed on the marital residence or on the separate property, and whether his services were worth $4,000. In any event, the husband failed to object to this matter below, and thus, he waived this argument on appeal. See Civ.R. 53(D)(3)(b) (objections shall be specific and state with particularity all grounds for objection); (iv) (failure to object waives the right to assign such error on appeal).

¶{22} The husband additionally argues that the distribution of the credit card debt was inequitable. The parties were found to have $64.797.37 in credit card debt: $26,535.37 (41%) in the wife's name, and $38,262 (59%) in the husband's name. Each party had been paying the debt in their own names. The magistrate found that based upon the disparity in incomes, this percentage of debt repayment/allocation was equitable.

¶{23} The husband's only objection relevant to credit card debt stated that their disparity in income should not mean that she pays less credit card debt since she

refuses to work full-time and the magistrate found that she was capable of working full-time. As for disparity in incomes, the husband was calculated to have gross annual income of $62,040.80 while the wife, who worked part-time and cared for the parties' young child, was imputed income of $15,184. The magistrate's decision that she could work full-time was already part of the equation. That is, the magistrate had imputed income to her; thus, the court already considered the amount that the wife could be making.

¶{24} In any event, the husband no longer contests the chosen percentage or the disparity in income theory. Rather, the husband's appellate argument is that the court did not take into consideration that the Chase card in the wife's name represented premarital debt. (Tr. 242-246). As the court stated, there were no specifics provided for what amounts could be attributed to what purchases. Yet, the wife admitted that her premarital credit card debts were consolidated into the Chase card, that the card represented premarital debt, and that the card was not active for use. (Tr. 243-244).

¶{25} However, the husband failed to enter a specific objection below on the issue of premarital credit card debt, and thus the issue is waived on appeal. See Civ.R. 53(B)(3)(b)(ii) (objections shall be specific and state with particularity all grounds for objection), (iv) (failure to object waives the right to assign such error on appeal). The only exception would be if there existed plain error in the magistrate's failure to consider the wife's admission that the Chase card is premarital debt. Civ.R. 53(B)(3)(b)(iv). Plain error is recognized in a civil case only in an extremely rare case involving exceptional circumstances where the unobjected to error seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. *Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, ¶43, quoting *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, syllabus.

¶{26} We refuse to find plain error here. It was not inequitable to include the Chase card in the 41/59 split because the wife was also ordered to pay the entire $11,603.37 MBNA Visa card even though most of the purchases were made in order to renovate the husband's home. (Tr. 239-241, 247-248). Additionally, some of the purchases on the cards in the husband's name that were found to be marital debt were

for renovating the house he was awarded. Other debt on these cards was for farm equipment or supplies for his separate property. Although he spoke about being credited that money back at the end of the year, this testimony was vague.

¶{27} Finally, the husband states that the division of personalty is inequitable because the magistrate failed to consider that the wife received the horse (which he values at $1,400) and horse equipment (which he values at $3,020). Regarding personalty, the magistrate noted that the parties prepared personal property lists, that the parties divided their household goods and furnishings to their satisfaction (with the exception of the refrigerator located at the husband's home), and that the parties would each receive these items as agreed in Exhibits 17, 18, and A4. The husband's objection states merely that the magistrate acted contrary to the weight of the evidence when it found that the parties had divided the personalty to their mutual satisfaction because the property retained by the wife exceeds the value of the property retained by the husband. The court overruled the objection, noting that the values assigned were uncertain and that the parties led the court to believe that the distribution was agreed upon.

¶{28} We first note that part of the imbalance on appellant's personalty list is the result of him valuing the wife's engagement ring as being worth $8,500; however, an engagement ring is a gift once the condition of marriage is satisfied. See, e.g., *Derrit v. Derrit*, 11th Dist. No. 2004-P-0007, 2005-Ohio-4777, ¶48-49. Thus, it is not marital property merely because his list purports it to be so. In any event, we turn to his specific arguments on appeal.

¶{29} The husband cites us to page 55 of the transcript in support of his argument that the wife was awarded $3,020 worth of horse equipment. However, this page contains the husband's testimony that they paid $3,020 for farming equipment to make hay on the farm. (Tr. 55). He characterized the hay equipment as being for the wife's horses; however, he owns farmland and spends his evenings working his land as a farmer. Moreover, the wife's exhibit 18 states that the husband has the hay rake, the hay baler, and the mower for hay. (The husband's exhibit A4 states that the wife has the "horse equipment," which he valued at only $400.) Thus, he was awarded the hay farming equipment. As such, this argument is overruled.

**¶{30}** The husband then cites page 57 in support of his claim that the wife got more personalty than him, claiming that the court failed to consider that she received a horse which cost them $1,400. However, his testimony was that they bought this horse for one of the wife's daughters. Moreover, his list valued the horse at $2,500; however, his testimony and his appellate brief states that the horse cost them $1,400. (Tr. 57). Combined with his utilization of the engagement ring and his failure to note that he was awarded the $3,020 in hay equipment, the personalty division was not inequitably balanced as appellant claims. Furthermore, as the court noted, the values assigned by the husband were uncertain, and no values were assigned to most of the property that had already been divided.

**¶{31}** Lastly, we note that the wife's response brief mentions financial misconduct as a reason for an unequal award. She points to a loan in appellant's name as an unmarried man. However, this loan was attributed to appellant in any event as he was maintaining the house used as collateral for the loan. Moreover, this was a loan from the same bank that the parties had just used for other loans. Appellant stated that he did not realize the bank checked that he was unmarried. In fact, the court specifically found that $30,000 from this loan was used to purchase the wife's vehicle and the rest went to renovate their residence. The court did not find financial misconduct regarding this credit line. Nor did the court find financial misconduct for any other matter. Thus, we have not used the wife's financial misconduct theory.

ASSIGNMENT OF ERROR NUMBER TWO

**¶{32}** Appellant's second assignment of error provides:

**¶{33}** "THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF THE APPELLANT-DEFENDANT WHEN IT FOUND APPELLANT-DEFENDANT'S APPRAISAL TO BE UNTIMELY."

**¶{34}** A Columbiana County Domestic Relations Court Local Rule provides: "The opinion of the parties or their counsel as to the value of their real and personal property, absent consent and agreement of each as to a single valuation or absent an appraisal or written stipulation as aforesaid will not be accepted as proof of value. The Court will accept the valuation of the Columbiana County Auditor as allowed by Rule 9.8(4)." Col.Cty. D.R. Loc.R. 9.10(A)(2). The rule goes on to state, "Failure to comply

with this Rule may result in dismissal of the case, the Court's appointment of an appraiser, pursuant to Evidence Rule 702, or other sanctions which may be imposed by the Court." Col.Cty. D.R. Loc.R. 9.10(B).

¶{35} On June 3, 2009, the court entered a scheduling order that all discovery should be completed by October 1, 2009, that trial would proceed on November 12, 2009, and that any real estate reports should be submitted to the other party thirty days prior to trial. Just before trial, a continuance was granted until February 26, 2010. Just after this continuance was granted, the wife sought to have the Waterford Road property appraised and filed a motion to compel when the husband was uncooperative. Prior to the February hearing, the issue was resolved by the parties, and the motion was withdrawn. The wife's appraisal was conducted on January 15, 2010. At the February hearing, the wife presented testimony that the Waterford Road house had a value of $200,000, and the appraisal was admitted without objection. (Tr. 93).

¶{36} The hearing was continued until April 26, 2010. The husband had the Waterford Road residence appraised on March 30, 2010, and the appraisal was completed on April 5, 2010. This report was offered to the wife on April 19 and tendered to her on April 20, 2010. At the April 26 hearing, the magistrate asked if there were any objections to the wife's exhibits. The husband's counsel informed the court that the wife's counsel advised that he was going to be objecting to the husband's appraisal as untimely and thus the husband wished to object to the wife's appraisal as it was also untimely since it was conducted long after the discovery deadline and since he was not provided with the formal appraisal until the day before the February 26 hearing. (Tr. 376). The wife's attorney argued that the husband had been provided with the summary appraisal prior to that date, but he could not provide the exact date. A short recess was called to investigate the dates involved, and the matter was not discussed further on the record.

¶{37} Thereafter, the husband presented testimony that the value of the property was $166,000, and his appraisal was introduced without objection by the wife. It was explained that this same appraiser had appraised the residence at $159,000 one year before for a bank. (Tr. 406). The husband also introduced the auditor's property tax assessment which valued the property at $117,600. After the husband's

evidence was presented, the wife offered no objections to any exhibits. (Tr. 675). The husband's brief states that an off-the-record discussion was held on the matter where both parties withdrew their objections and allowed each other's appraisals to be admitted.

¶{38} Despite this, the magistrate found that the wife's appraisal was timely provided to the husband pursuant to the local rule but found that the husband's appraisal was untimely because it was not performed until after the first hearing date. The magistrate thus accepted the $200,000 appraisal provided by the wife. In his objections, the husband noted that the parties had each withdrawn their objections and agreed to allow both appraisals into evidence. The husband urged that if his appraisal was untimely, then so was the wife's, in which case the court should have used the auditor's value of $117,600.

¶{39} The trial court disagreed with the magistrate's statements regarding the timeliness of the appraisals. The court stated that both appraisals were untimely but that each party agreed to allow the other's appraisal into evidence. The court continued that both appraisals would be considered and noted that it was within the court's discretion to choose the appropriate appraisal. The court provided citations to various cases regarding credibility in appraisals and discretion in evaluating competing property values. See *Osting v. Osting*, 3d Dist. No. 1-03-88, 2004-Ohio-4159 (not abuse of discretion for court to assign value to real estate in amount supported by competent, credible evidence); *Rodriguez v. Rodriguez* (Apr. 13, 1999), 11th Dist. No. 89-G-1498 (conflicting appraisals required credibility determination and evaluation of emphasis placed on different features of property). The court then concluded that a decision to assign $200,000 as the value was supported by competent and credible evidence and was not an unreasonable figure for the magistrate to have assigned to the property.

¶{40} Appellant believes that the court should not have adopted the magistrate's decision finding a $200,000 value where the magistrate's decision was based upon the exclusion of his $166,000 appraisal. However, the magistrate also considered the auditor's value of $117,600 and thus did conduct a credibility review of the wife's appraisal. Moreover, the trial court *agreed* that the magistrate should not have excluded appellant's appraisal. The trial court stated that it conducted an

independent review of the decision, the transcripts, and the exhibits and that it independently analyzed the issues presented. See Civ.R. 54(D)(4)(d) ("In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."). Although the court's statements regarding the appraisals could have been worded to show a more independent review, the trial court, who is also permitted to make factual findings (as opposed to merely reviewing in an appellate fashion), took all appraisals into consideration and found that the wife's appraisal was more credible. As such, this assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NUMBER THREE</u>

¶{41} Appellant's third assignment of error contends:

¶{42} "THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF THE APPELLANT-DEFENDANT IN NAMING THE APPELLEE THE PRIMARY RESIDENTIAL PARENT OF THE PARTIES' MINOR CHILD."

¶{43} A trial court has broad discretion in its allocation of parental rights and responsibilities. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74. Appellate courts must afford "the utmost respect" to the trial court's exercise of discretion because "[t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." Id. See, also, *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 419 (the prohibition on reviewing courts substituting their judgment for that of the trial court is even more important in custody cases). Consequently, a reviewing court may not overturn a trial court's determination regarding the allocation of parental rights and responsibilities absent an abuse of discretion. *Pater v. Pater* (1992), 63 Ohio St.3d 393, 396. An abuse of discretion implies that the trial court's decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

¶{44} In general, the reviewing court is obliged to presume that the findings of the trier of fact are correct. *State v. Wilson*, 113 Ohio St.3d 382, 2007–Ohio–2202, ¶24, citing *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80–81. This presumption arises in part because the fact-finder occupies the best position to watch the witnesses and observe their demeanor, gestures, and voice inflections and to utilize these observations in weighing credibility. Id. "A reviewing court should not

reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." Id.

¶{45} When making an original allocation of parental rights and responsibilities, the court shall take into account the child's best interests. R.C. 3109.04(B)(1). In determining the best interests of a child, the court shall consider all relevant factors, including, but not limited to: (a) the parents' wishes; (b) the child's wishes if the court has interviewed the child; (c) the child's interaction and interrelationship with the child's parents, siblings and any other person who may significantly affect the child's best interests; (d) the child's adjustment to home, school, and community; (e) the mental and physical health of all relevant persons; (f) the parent more likely to honor and facilitate court-approved parenting time rights or companionship rights; (g) whether either parent has failed to make all child support payments pursuant to a child support order; (h) whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to certain criminal offenses involving children; (i) whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with a court order; and (j) whether either parent has established a residence, or is planning to establish a residence, outside of Ohio. R.C. 3109.04(F)(1)(a)-(j).

¶{46} The husband focuses here on (c) regarding interactions with important people, (d) regarding the child's adjustment to home, school, and community, and (f) regarding the parent more likely to honor parenting time. As to (c) and (d), he points out that he lives in the last marital residence in a home that has been in his family for over one hundred years in a neighborhood filled with various family members. As to (f), he believes that the magistrate was incorrect in finding that both parents will honor the visitation schedule. He states that the record shows that the wife is inflexible, has refused to provide him with her work schedule, and has left the child with her ex-husband instead of asking him to babysit. On another topic, the husband contends that it is improper to consider a full-time job as a reason not to allow someone to be the residential parent and that the magistrate should not have stated that a toddler is

"not copasetic to farming." He also alleges that she brought the child to counseling without informing him and tries to avoid his presence at medical appointments.

¶{47} As to this latter allegation, the wife testified that *she* went to two counseling sessions to learn how to deal with her belief that the husband was telling the two-year-old child that she did not love the child and that the child should choose not to live with her. (Tr. 338). She stated that she brought the child with her but the child mostly slept. (Tr. 595). The wife also testified that she informed the husband about the child's medical appointments and that the one time that he asked her to change the date so he could attend, she refused because she would have had to reschedule a standard well-visit from November until January. (Tr. 333).

¶{48} As to the adjustment to home, school, and community, the child was only two. The husband does have family nearby; however, the child has two half-sisters who live with the wife. These children testified as to their relationship with the child. Moreover, as the magistrate emphasized, the wife has been the primary caregiver since the child's birth. As to honoring parenting time, this is a credibility issue, and the magistrate could rationally believe that the mother would honor any court order. In addition, the magistrate ordered each parent to offer parenting time prior to using babysitters or daycare providers. Notably, no court order previously existed on these issues.

¶{49} As to the work schedules, the parent with more time to spend with the child is a permissible consideration for custody, especially where the parents' schedules were established during the marriage. Here, the wife worked part-time in the form of half-days. She testified that when attaining a new client, she scheduled the job during the hours when the husband had the child. And, she performed some services that did not require her to leave the child at all, such as horse-sitting and dog-sitting. The husband did not merely work a full-time job at a farming supply business, but also worked overtime during certain seasons. Moreover, he is committed to farming after work hours, which was described on the record as a very time-consuming endeavor. There is nothing unreasonable about the magistrate opining that a toddler is too young to attend the farming activities; in other words, it is reasonable to opine that a toddler would not be riding around on heavy equipment on

a daily basis.  In fact, the magistrate acknowledged that as the child gets older, he may then be able to assist his father with farming.

¶{50} Finally, the court did provide the husband with some extended companionship.  In addition to the standard every other weekend from Friday evening through Sunday evening, the husband was permitted to keep the child until Monday morning.  He was also permitted to keep the child overnight on his weekly Wednesday visitations.  In conclusion, the decision to name the wife as the residential parent was not unreasonable, unconscionable, or arbitrary, but was within the trial court's sound discretion.  This assignment of error is overruled.

¶{51} For the foregoing reasons, the judgment of the trial court is hereby reversed and modified in part, and affirmed in part.

Waite, P.J., concurs.
DeGenaro, J., concurs.