[Cite as *Johnson v. Wal-Mart Stores E., L.P.*, 2014-Ohio-2998.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| JANET M. JOHNSON, et al. | : | |
| | : | Appellate Case No. 25972 |
| Plaintiffs-Appellants | : | |
| | : | Trial Court Case No. 2012-CV-6243 |
| v. | : | |
| | : | |
| WAL-MART STORES EAST, L.P. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of July, 2014.

. . . . . . . . . . .

THOMAS J. INTILI, Atty. Reg. #0036843, Intilli & Groves Co., L.P.A., 130 West Second Street, Suite 310, Dayton, Ohio 45402
        Attorney for Plaintiffs-Appellants, Janet & William Johnson

CARRIE M. STARTS, Atty. Reg. #0083922, and ROBERT W. HOJNOSKI, Atty. Reg. #0070062, Reminger Co., L.P.A., 525 Vine Street, Suite 1700, Cincinnati, Ohio 45202
        Attorneys for Defendant-Appellee, Wal-Mart Stores East, L.P.

DANA BUCHANAN, 45 Larkspur Drive, South Vienna, Ohio 45369
        Defendant-Appellee, *pro se*

. . . . . . . . . . . . .

FAIN, J.

{¶ 1}    Plaintiff-appellant Janet Johnson appeals from a summary judgment rendered against her on her complaint against defendant-appellee Wal-Mart Stores East, L.P.   Johnson

argues that Wal-mart breached its duties of care to her, as a business invitee, to: (1) inform the user of the motorized cart of its proper use and operation; (2) warn the user of the risks of using the motorized cart; (3) warn Johnson of the risks of motorized cart use; and (4) not to erect displays in its store-long, fifteen-foot wide aisles that would obstruct a customer's vision.

{¶ 2} We conclude that: (1) there is neither any allegation, nor any evidence, that the motorized cart that struck Johnson was being used or operated improperly, other than the fact that the user, Dana Buchanan, and Johnson, collided just beyond a display in the middle of an aisle; (2) Wal-mart had no duty to warn either Johnson or Buchanan of the danger of their colliding with one another, since that danger would be obvious to any reasonable customer; and (3) Wal-mart had no duty not to erect displays above eye-level in its store-long, fifteen-foot wide aisles. Accordingly, the judgment of the trial court is Affirmed.

## I. Johnson and Buchanan Collide Just Past a Store
## Display in the Middle of a Fifteen-Foot Wide Aisle

{¶ 3} In late August, 2010, at about 1:15 in the afternoon, Johnson and her husband, Bill, went to a Wal-mart store in Springfield, Ohio. Due to some physical ailments, Bill used a Wal-mart motorized cart. At one point, Johnson started down a long, fifteen-foot wide aisle through the length of the store, behind the checkout counters, telling Bill to stay where he was.

{¶ 4} Johnson noticed a woman, later identified as Buchanan, in a Wal-mart motorized cart, on the right side of the aisle. Johnson was walking down the left side of the aisle. Buchanan's cart was facing across the aisle, but Buchanan was looking to her right side, in the same direction Johnson was walking.

{¶ 5} Displays were placed on skids in the middle of the aisle. Johnson was passing a pillow display, and felt one of the pillows before continuing down the aisle. The display was a little over six feet high, and Johnson could not see over it. By this point, she had lost sight of Buchanan.

{¶ 6} Just as Johnson stepped past the pillow display, either she and Buchanan collided, causing Johnson to fall and seriously injure her ankle, or she and Buchanan were about to collide, and Johnson slipped and fell while trying to avoid the collision. In her deposition, Johnson, while not able to recall what caused her to fall, stated that it had to have been Buchanan's cart colliding with her, at least in part due to the nature of the compound fracture of her ankle bone and marks on her ankle. Johnson made a statement at the store shortly after the incident, which Kevin J. Howard, the assistant store manager, reduced to writing, read back to Johnson, and had her sign:

CUSTOMER WAS WALKING ACROSS HEALTH & BEAUTY DEPARTMENT. I STARTED TO TURN DOWN THE SHAMPOO AISLE WHEN ANOTHER CUSTOMER IN ELECTRIC CART WAS COMING OUT OF THAT SAME AISLE. CUSTOMER TRIED TO AVOID ELECTRIC CART & SLIPPED AND FELL TO GROUND CAUSING INJURY TO ANKLE.

{¶ 7} Buchanan also gave a signed, written statement at the scene:

I was in an electric cart. A lady was walking in the same path. She tried to stop when she slipped and fell hurting her right leg and ankle. One leg (left) went forward and right leg went behind her.

{¶ 8} In her deposition, Johnson said that the first thing she could remember after she was on the

ground was Buchanan getting off the cart, walking over to her, leaning over her, and saying, "are you all right? I'm so sorry."

## II. The Course of Proceedings

{¶ 9}    Johnson brought this action against Buchanan and Wal-mart, seeking to recover damages for the injuries she sustained as a result of the incident at the Wal-mart store.   Johnson's husband, Bill, was joined as a plaintiff, seeking damages for loss of consortium.   His claims were voluntarily dismissed, without prejudice, after his death.   Johnson took a default judgment against Buchanan.

{¶ 10}   Wal-mart moved for summary judgment, attaching to its memorandum in support of its motion a transcript of Johnson's deposition testimony.   Johnson responded with a memorandum contra, attaching a transcript of her deposition testimony and the written statements of Buchanan and herself, taken at the Wal-mart store shortly after the incident, which were marked as exhibits at Johnson's deposition.   Johnson also attached medical records, which are not relevant to this appeal.   Later, Johnson filed a transcript of the deposition she took of Kevin J. Howard, the assistant store manager, who was present, just a few feet away, at the time Johnson was injured, but who did not see her falling or being struck.   Howard took the written statements from Buchanan and Johnson.

{¶ 11}   Wal-mart filed a reply memorandum in support of its motion for summary judgment.   The trial court sustained Wal-mart's motion, and rendered summary judgment for Wal-mart upon Johnson's complaint.   From that judgment, Johnson appeals.

## III. The Requirements for Summary Judgment

{¶ 12}   Johnson's sole assignment of error is as follows:

THE TRIAL COURT ERRED BY GRANTING DEFENDANT-APPELLEE WAL-MART STORES EAST, L.P.'S MOTION FOR SUMMARY JUDGMENT.

{¶ 13} Wal-mart argued, and the trial court agreed, that the party responding to a motion for summary judgment has the initial burden of producing evidence in support of any issue upon which it bears the burden of proof at trial, citing *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991). In our view, this is no longer strictly accurate, in view of the subsequent case of *Dresher v. Burt*, 75 Ohio St.3d 280, 294-295, 662 N.E.2d 264 (1996), in which the court held:

* * * In *Mitseff* [*v. Wheeler*], 38 Ohio St.3d 112, 114-115, 526 N.E.2d 798, 800-801 [(1988)], we recognized that:

"While *Celotex* [*Corp. v. Catrett*] [ *supra*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265] says that a moving party does not have to support its motion with affidavits negating the opponent's claims, *Celotex* also plainly states that 'a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.' *Celotex, supra*, at 323 [106 S.Ct. at 2553, 91 L.Ed.2d at 274].

"Accordingly, even *Celotex* makes clear that a party moving for summary judgment has certain obligations that must be met. These obligations are set forth in *Massaro v. Vernitron Corp.* (D.Mass.1983), 559 F.Supp. 1068. *Massaro* held that the party seeking summary judgment ' * * * bears the burden of affirmatively demonstrating that, with respect to every essential issue

of each count in the complaint, there is no genuine issue of fact.' *Massaro, supra*, at 1073 (citing *Mack v. Cape Elizabeth School Board* [C.A.1, 1977], 533 [ sic 553] F.2d 720, 722). The moving party bears this burden ' * * * even with regard to issues on which plaintiffs * * * would have the burden of proof should the case go to trial.' *Massaro, supra*, at 1073, citing *Ramsey [sic, Ramsay] v. Cooper* (C.A.1, 1977), 553 F.2d 237, 240-241, fn. 8; *Adickes v. S.H. Kress & Co.* (1970), 398 U.S. 144, 159-161 [90 S.Ct. 1598, 1609-1610, 26 L.Ed.2d 142, 155-156]. *See, also, Bird v. Zimmerman Fur Institute, Inc.* (S.D.Ohio 1968), 294 F.Supp. 202.

"The requirement that a party seeking summary judgment disclose the basis for the motion and support the motion with evidence is well founded in Ohio law. 'The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment.' *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47, citing *Hamlin v. McAlpin Co.* (1964), 175 Ohio St. 517, 519-520, 26 O.O.2d 206, 207, 196 N.E.2d 781, 783-784. Reading the requirement of *Harless, supra*, in conjunction with Civ.R. 56 and 7(B)(1), it can readily be seen that the moving party must state specifically which areas of the opponent's claim raise no genuine issue of material fact and such assertion may be supported by affidavits or otherwise as allowed by Civ.R. 56(C).

"It should be noted that placing the above-mentioned requirements on the moving party does not mean the nonmoving party bears no burden. Requiring that the moving party provide specific reasons and evidence gives rise to a reciprocal burden of specificity for the non-moving party [outlined in Civ.R. 56(E) ]." (Footnote omitted.)

However, in *Wing, supra*, 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the

syllabus, a majority of this court held that, "A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. (*Celotex v. Catrett* [1986], 477 U.S. 317 [106 S.Ct. 2548, 91 L.Ed.2d 265], approved and followed.)" We now believe that this holding in *Wing* is too broad. Specifically, paragraph three of the syllabus in *Wing* fails to account for, among other things, the burden Civ.R. 56 places upon a moving party. We therefore limit paragraph three of the syllabus in *Wing* to bring it into conformity with *Mitseff, supra*, 38 Ohio St.3d 112, 526 N.E.2d 798, *Celotex, supra*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, the requirements of Civ.R. 56, and our discussion and holdings supra.

{¶ 14}  *See also Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 144-145, 677 N.E.2d 308 (1997).

{¶ 15}  In short, even with respect to an issue upon which the respondent has the burden of proof at trial, a party moving for summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact regarding that issue.  One way of satisfying this burden is by affirmatively showing, perhaps through taking the adverse party's deposition, or by interrogatories, that the adverse party has no evidence to prove the issue upon which it will have the burden of proof at trial.

### IV.   Wal-mart Had No Duty to Warn Either the Users of its Motorized Carts or other Customers in the Store of the Dangers Inherent in the Use of the Carts

{¶ 16}  Johnson argues that two of the duties of care breached by Wal-mart are the duty to warn users of its motorized carts of the dangers inherent in their use, and the duty to warn other customers in the store of the danger represented by the use of the motorized carts.  We

conclude that Wal-mart had neither duty.

{¶ 17} Johnson cites *Elam v. Kroger Co.*, 1st Dist. Hamilton No. C-940692, 1995 WL 392489, *2, 1995 Ohio App. LEXIS 2809 (July 5, 1995), for the proposition that:

A store owner has a duty to exercise reasonable care: (1) to avoid injuring a customer by negligent activities; (2) to warn customers of hidden dangers known to the store owner; (3) to make reasonable inspections of the business premises to discover any potential dangers; and (4) to take reasonable precautions to protect its customers from dangers which are foreseeable from the arrangement or use of the premises.

{¶ 18} Johnson's injury was caused either by her collision with Buchanan, or by her near-collision with Buchanan. The evidence presented by both parties establishes that Johnson's and Buchanan's paths crossed just as Johnson was stepping past the display to her right in the store aisle, with Buchanan coming from her right. The intersection was blind to both parties. Blind intersections in stores are common occurrences. Johnson and Buchanan each knew that she could not see if anyone was approaching the intersection past the display from the other direction. The danger of a collision or near-collision was not a hidden danger, since each was bound to know that there was a risk that another person might be entering the intersection at the same time.

{¶ 19} This Wal-mart store had six motorized carts. Johnson's husband was using one of them. Therefore, the risk that a customer crossing the end of the display from Johnson's right, at the same time that Johnson was stepping past the end of the display, might be on a motorized cart, possibly making a collision more hazardous, was a risk that was known to

Johnson.

{¶ 20}   The case before us is unlike *Perry v. Eastgreen Realty Co.*, 53 Ohio St.2d 51, 52, 372 N.E.2d 335, 336 (1978), cited in *Elam, supra*, where the danger represented by a glass wall was arguably not apparent to the customer who walked into it, since the arrangement and composition of the wall rendered it invisible to the customer.

{¶ 21}   We conclude that Wal-mart had no duty to warn either Johnson or Buchanan of the risk that they might collide, or nearly collide, with one another past the center-aisle display.

**V.   Whether Wal-mart Instructed Buchanan Concerning the Proper Operation of the Motorized Cart Is Not a Material Issue of Fact in the Absence of any Allegation that Johnson's Injuries Were Caused by Improper Operation of the Cart**

{¶ 22}   Johnson argues that Wal-mart breached its duty of informing users of its motorized carts of their proper use and operation:

> Wal-Mart admits that it does not inform or instruct customers how to operate motorized shopping carts.   With respect to their proper and safe operation, Wal-Mart customers are left to their own devices, i.e. Wal-Mart customers must learn on their own how the cart starts and stops, how it steers, how fast it goes, and how to avoid hitting persons and things when confronted with the unexpected.   Johnson's brief, p. 10.

{¶ 23}   Johnson did not allege in her complaint that her injuries were caused by Buchanan's improper operation of the motorized cart; i.e., that Buchanan collided with her, or nearly collided with her, because Buchanan did not know how to stop or steer the cart, or did not

know how fast the cart went. Of course, running into Johnson with the motorized cart could be said to be an improper operation of the cart, but no cart-user would need to be instructed that she shouldn't run into another customer while using the cart – any reasonable customer would know that without having to be instructed. Nor is there any evidence in the record that Buchanan's lack of instruction concerning the proper operation of the motorized cart was a cause of the collision, or near-collision.

{¶ 24} Johnson argues that proximate cause, unlike the existence of a duty, is an issue of fact for a jury to determine. But before an issue of fact is submitted to a jury, there must be some evidence of that fact. Thus, in *Fleck v. Snyder Brick & Block*, 2d Dist. Montgomery No. 18368, 2001 WL 256279 (March 16, 2001), a case Johnson cites, we held at *2 that: "It was not the [movant-]Plaintiff's burden at this stage to show that the [fuel] gauge was a proximate cause of the explosion[,]" but only after first noting that: "There was evidence that the fuel explosion was causally related to the inoperable fuel gauge."

{¶ 25} Both sides submitted Johnson's deposition. From her deposition, it is clear that Johnson has no evidence that any failure on Wal-mart's part to have instructed Buchanan on the proper operation of the motorized cart was causally related to the collision or near-collision. Therefore, the issue of whether Wal-mart failed to instruct Buchanan on the proper operation of the cart is not a genuine issue of *material* fact.

{¶ 26} Although Johnson does not explicitly argue that Wal-mart's failure to have adequately maintained or inspected its motorized carts is a genuine issue of material fact, she did allege that failure in the complaint, and refers to that allegation in her brief. Again, this is not a genuine issue of *material* fact, since it is apparent from Johnson's deposition that she has no

evidence that the motorized cart malfunctioned.

### VI.   Wal-mart Had No Duty to Avoid Displays or

### Merchandise Shelving Extending Above Eye-Level

{¶ 27}   In her complaint, Johnson alleged that Wal-mart had a duty to keep its store "safe for invitees, such as Janet Johnson, as necessary for its use in the ordinary course of business." In this appeal, Johnson argues that Wal-mart had a duty to reduce the height of the display in its center aisle so that the intersection would not be blind.   In our view, this was not a reasonable precaution.   The same danger is present whenever an aisle contains merchandise stacked above eye-level.   The aisle creates a blind intersection.   A reasonable customer knows this, and exercises caution when passing beyond the aisle, since there may be another customer coming from the other side of the aisle.

{¶ 28}   To require store owners to limit the height of merchandise, or displays, stacked near the ends of the aisles in their stores to below eye-level is not, in our view, a commercially reasonable requirement to ensure the safety of customers traversing the aisles.   It is an unreasonable limitation upon the store owner, which would be imposed solely to avoid the unreasonable risk taken by customers who enter a blind intersection without thought to the possibility that another customer may be entering the same intersection from another direction at the same time.   We conclude, therefore, that Wal-mart had no duty to avoid placing displays extending above eye-level.[1]

---

[1]   Of course, if the placement of displays or shelving extending above eye-level would conceal a risk of harm that a reasonable customer would not anticipate, that placement might violate the store owner's duty to keep its premises reasonably safe.

## VII. Conclusion

{¶ 29} For the reasons set forth above, we conclude that Wal-mart succeeded in demonstrating that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Therefore, the trial court did not err in rendering summary judgment, Johnson's sole assignment of error is overruled, and the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Thomas J. Intili
Carrie M. Starts
Robert W. Hojnoski
Dana Buchanan
Hon. Barbara P. Gorman