[Cite as *Clough v. Watkins*, 2020-Ohio-3446.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

ALAN CLOUGH, :

    Plaintiff-Appellant, : Case No. 19CA20

    vs. :

EMILY WATKINS, : DECISION AND JUDGMENT ENTRY

    Defendants-Appellees. :

_____

APPEARANCES:

Alan Clough, Sheffield Village, Ohio, pro se appellant.

Paul R. Morway, Cleveland, Ohio, for appellee.

_____

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 6-19-20
ABELE, J.

{¶ 1} This is an appeal from a Washington County Common Pleas Court judgment in favor of Emily Watkins, defendant below and appellee herein. Alan Clough, plaintiff below and appellant herein, assigns the following errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE COURT ERRED BY NOT ALLOWING APPELLANT CLOUGH TO ADMIT THE MEDICAL REPORT REQUESTED AND PROVIDED BY DEFENDANT WATKINS AS THE MEDICAL REPORT FALLS UNDER THE BUSINESS RECORD EXCEPTION TO THE HEARSAY RULE[.] THUS, CLOUGH IS ENTITLED TO A NEW TRIAL."
>
> SECOND ASSIGNMENT OF ERROR:

> "THE COURT ERRED BY GRANTING THE DIRECTIVE [SIC] VERDICT SINCE IT IS COMMON KNOWLEDGE THAT NECK AND BACK INJURIES CAN BE CAUSED BY A REAR-END COLLISION[.] THEREFORE THE DECISION ON CAUSES [SIC] AND EFFECT SHOULD HAVE BEEN SUBMITTED TO THE JURY BASED ON THE TESTIMONY OF ALAN CLOUGH."

> THIRD ASSIGNMENT OF ERROR:

> "CLOUGH IS ENTITLED TO A NEW TRIAL BECAUSE A RULES [SIC] OF EVIDENCE SHOULD NOT BE USED TO PREVENT OR IMPEDE JUSTICE."

{¶ 2} On October 18, 2017, appellant filed a complaint against Emily Watkins and alleged that appellee negligently operated her motor vehicle and caused personal injury to appellant.

{¶ 3} On July 31, 2019, the trial court held a jury trial.  Before the trial began, however, the court addressed pending motions.  Appellant asserted that he should be permitted to testify that it is common knowledge that getting struck from behind at forty-five miles per hour will cause whiplash.  The court, however, stated that because appellant is not a medical expert, appellant could not testify regarding soft tissue injuries.  Later, appellant testified that after the accident, he "had a lot of neck pain" and "some pain in [his] back."  Appellant then attempted to introduce a report prepared by Dr. Kevin Triangle, but appellee objected.  Appellee's counsel pointed out that Dr. Triangle did not personally treat or evaluate appellant, but instead reviewed medical records and prepared a report based upon his review of the records.  The court sustained appellee's objection.

**{¶ 4}** After appellant testified, appellee requested a directed verdict and asserted that appellant did not present any evidence to establish proximate cause between the accident and appellant's injuries. The trial court granted appellee's motion and found that appellant did not present any evidence to establish causation and that he did not present any evidence to establish the amount of damages claimed.

**{¶ 5}** On August 8, 2019, the court dismissed the case. This appeal followed.

I

**{¶ 6}** In his first assignment of error, appellant asserts that the trial court erred by prohibiting appellant from introducing a medical report. Appellant contends that the report should be admissible as a business record.

**{¶ 7}** Initially, we note that appellant did not proffer the medical report. Generally, a party may not predicate error upon a ruling that excludes evidence unless the party proffers the evidence. *See* Evid.R. 103;[1] *State v. Gilmore*, 28 Ohio St.3d 190, 503 N.E.2d 147 (1986). Evid.R. 103 does not require a proffer, however, when the substance of the evidence "was apparent from the context within which questions were asked." *See also Gilmore*, 28 Ohio St.3d at 192. In *Gilmore*, the court summarized the requirements for predicating error on the exclusion of evidence as follows:

---

[1]Evid.R. 103(A) provides, in pertinent part, as follows:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
> * * *
> (2) * * * [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. * * *

[A] party may not predicate error on the exclusion of evidence during the examination in chief unless two conditions are met: (1) the exclusion of such evidence must affect a substantial right of the party and (2) the substance of the excluded evidence was made known to the court by proffer or was apparent from the context within which questions were asked.

*Id.*; *see also State v. Davie*, 80 Ohio St.3d 311, 327, 686 N.E.2d 245 (1997).

**{¶ 8}** In *Gilmore*, the court recognized that "the better practice * * * may be to proffer excluded evidence." *Id.* at 192. The court stated, however, that "under Evid.R. 103 a party is not required to proffer excluded evidence in order to preserve any alleged error for review if the substance of the excluded evidence is apparent to the court from the context within which questions were asked." *Id.*

**{¶ 9}** In the case at bar, we do not believe that the substance of the excluded evidence is apparent from the context. Instead, the transcript shows only that appellant wished to introduce a medical report from a doctor who appellee had retained to review appellant's medical records. The transcript does not reveal the substance of the report. Rather, the only significance of the medical report that we can gather from the transcript is that appellant believed that the report would help his case. Consequently, under these circumstances we do not believe that appellant properly preserved the alleged error for appellate review. *E.g., State v. Martin*, 4th Dist. Pickaway No. 04CA24, 2005-Ohio-1732, 2005 WL 850863, ¶ 43; *accord State v. Barton*, 108 Ohio St.3d 402, 2006-Ohio-1324, 844 N.E.2d 307, ¶ 67; *Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, ¶ 34.

**{¶ 10}** We additionally note that appellant attached the medical report to his appellate brief. However, "a bedrock principle of appellate practice in Ohio [is] * * * that an appeals court is limited to the record of the proceedings at trial." *Morgan v. Eads*, 104 Ohio St.3d 142,

2004–Ohio–6110, 818 N.E.2d 1157, ¶ 13. Thus, "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. The Ohio Supreme Court has consistently enforced this holding. *E.g., Morgan*; *State v. Dixon*, 101 Ohio St.3d 328, 2004–Ohio–1585, 805 N.E.2d 1042, ¶ 62; *State v. Thomas*, 97 Ohio St.3d 309, 2002–Ohio–6624, 779 N.E.2d 1017, ¶ 50; *see Saunders v. Holzer Hosp. Found.*, 176 Ohio App.3d 275, 2008-Ohio-1032, 891 N.E.2d 1202, fn.3 (4th Dist.) ("A reviewing court should consider only the evidence that the trial court had before it.").

{¶ 11} Moreover, assuming, arguendo, appellant had properly proffered the evidence, we would find no error. A trial court enjoys broad discretion to determine whether to admit evidence. *See City of Urbana ex rel. Newlin*, 43 Ohio St.3d 109, 113, 539 N.E.2d 140, 144 (1989). Accordingly, absent an abuse of discretion, an appellate court may not reverse the trial court's decision. *See Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 569 N.E.2d 1056 (1991). An abuse of discretion connotes more than an error of law or judgment. As the court stated in *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St .3d 83, 87, 482 N.E.2d 1248 (1985):

> The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.

{¶ 12} Thus, an abuse of discretion will not be found when a reviewing court simply could maintain a different opinion were it deciding the issue de novo. Rather, to find an abuse of discretion, a reviewing court must determine that the trial court acted in an unreasonable,

arbitrary, or unconscionable manner.  *AAAA Enterprises, Inc. v. River Place Community Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597, 601 (1990).

{¶ 13} In the case at bar, appellant argues that the medical report is admissible as a business record under Evid.R. 803(6).   Evid.R. 803(6) provides as follows:

> (6) Records of Regularly Conducted Activity.  A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.   The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

{¶ 14} The Staff Notes to Evid.R. 803(6) explain that business records are excepted from the rule against hearsay because they carry a "circumstantial guaranty of trustworthiness."   The guaranty of trustworthiness results "because [a] business cannot, as a matter of course, function without accurate records."   *Id.*

{¶ 15} In order to be admitted into evidence, "[t]he record keeper * * * must testify that the records are such as are routinely kept as a part of the business and that the entrant (declarant) is under a duty to record the items contained in the record, and that the records are maintained accurately in accordance with a custom or routine."   *Id.*

{¶ 16} We observe that hospital records, such as a CT scan report, generally are admissible under Evid.R. 803(6).   *Lambert v. Goodyear Tire & Rubber Co.*, 79 Ohio App.3d 15, 606 N.E.2d 983 (4th Dist.1992), citing *Weis v. Weis*, 147 Ohio St. 416, 424, 72 N.E.2d 245 (1947).   In *Weis*, the Ohio Supreme Court described the types of hospital records that the rule

ordinarily allows as follows:

> * * * * [T]hose portions of hospital records made in the regular course of business and pertaining to the business of hospitalization and recording observable acts, transactions, occurrences or events incident to the treatment of a patient are admissible, in the absence of privilege, as evidence of the facts therein recorded, insofar as such records are helpful to an understanding of the medical or surgical aspects of the case, and insofar as relevant to the issues involved, provided such records have been prepared, identified and authenticated in the manner specified in the statute itself. * * *
>
> Such a hospital or physician's office record may properly include case history, diagnosis by one qualified to make it, condition and treatment of the patient covering such items as temperature, pulse, respiration, symptoms, food and medicines given, analysis of the tissues or fluids of the body and the behavior of and complaints made by the patient.

*Id.* at 424.

{¶ 17} In *Lambert*, we applied *Weis* and determined that the plaintiff's expert witness could offer an opinion formulated after reviewing the plaintiff's CT scan reports. We stated: "the fact that [the plaintiff's] expert witnesses did not personally perform the CT scans or view the CT scan films goes to the weight of the expert opinions, not the admissibility of the expert opinions." *Lambert*, 79 Ohio App.3d at 26. We further noted that the expert testimony did not rely upon the ""'diagnostic findings" of one doctor reported to and found among the records of another doctor.'" *Id.* at 23–24, quoting *Hytha v. Schwendeman*, 40 Ohio App.2d 478, 489, 320 N.E.2d 312 (10th Dist.1974) (Whiteside, J., concurring). Had it done so, then it would not have been admissible under the business-record exception. *Id.* (stating that "'[u]nder such circumstances, the report is not a business record of the receiving doctor'").

{¶ 18} In *Bush v. Burchett*, 4th Dist. Athens No. 94CA2237, 1995 WL 356527, *4 (June 13, 1995), this court determined that a medical expert's testimony that relied upon the medical

report of another doctor was not admissible under Evid.R. 803(6) and constituted inadmissible

hearsay.   In that case, the plaintiff and the defendant were involved in a motor vehicle accident.

At trial, the defendant presented testimony from the doctor who performed an independent

medical examination of the plaintiff.   This doctor, Dr. Wise, testified that the accident did not

proximately cause the plaintiff's injuries.   Dr. Wise additionally explained that he relied upon a

letter that the plaintiff's treating physician, Dr. Quenemoen, had prepared.   Dr. Quenemoen's

letter detailed his observations of the plaintiff and suggested that stress may be causing the

plaintiff's "unusual" set of symptoms.   Dr. Quenemoen further recommended that the plaintiff

seek "psychological testing and psychiatric evaluation."

{¶ 19} On appeal, the plaintiff argued that the trial court erred by allowing Dr. Wise to

read portions of Dr. Quenemoen's letter during Dr. Wise's testimony because, as the plaintiff

claimed, Dr. Wise's testimony constituted inadmissible hearsay.   This court agreed that Dr.

Wise's testimony was inadmissible hearsay, and we disagreed with the defendant's argument that

Dr. Wise's testimony was admissible under Evid.R. 803(6).

{¶ 20} We first explained that Dr. Wise's statements were hearsay as defined in Evid.R.

801(C):

> There is no question that the statements made by Dr. Quenemoen were
> out-of-court statements offered for the truth of the matter asserted, i.e., that
> appellant's problems were "nonanatomical," psychological in nature, and thus not
> a result of the motor vehicle accident.

*Id.* at *3.   We next reviewed Evid.R. 803(6) and determined that the rule "does not allow

medical opinions or diagnoses found in records to be admitted into evidence."   *Id.*   We noted

that the rule "allows into evidence out-of-court compilations of 'acts, events, or conditions' if

made in the regular course of business." *Id.* But we further pointed out that Evid.R. 803(6),

unlike its federal counterpart, specifically excludes "opinion and diagnoses." *Id.*, citing and

quoting Evid.R. 803(6) Staff Note. We thus concluded that "both the plain language to Evid.R.

803(6) and the Staff Note make it clear that Ohio does not provide an exception to the hearsay

rule for out-of-court medical opinions or diagnoses." *Id.* at *4. We then applied these

principles to Dr. Wise's testimony and explained:

> In this case, Dr. Wise read from a letter written by Dr. Quenemoen in
> which Dr. Quenemoen expressed the opinion that appellant's injuries were
> "nonanatomical," and were the result of stress and psychological problems. This
> clearly constitutes an impermissible diagnosis and opinion not falling within any
> recognized exception to the hearsay rule. As a result, the trial court erred by
> allowing Dr. Wise to read those portions of Dr. Quenemoen's letter.

*Id.*

{¶ 21} In the case sub judice, the medical report that appellant sought to introduce

appears to be substantially similar to Dr. Wise's testimony in *Bush*. We again note, however,

that the medical report is not part of the record on appeal. We therefore can only surmise as to

the report's contents based upon the limited discussion that occurred during the trial court

proceedings. The discussion indicates that an independent medical expert had reviewed

appellant's medical records and prepared a report that detailed the expert's opinions. Because

neither party called the expert as a witnesses to testify at trial, the expert's report constitutes

hearsay.

{¶ 22} Even if the medical expert's report arguably could be considered a business

record, we note that the rule requires "[t]he record keeper * * * [to] testify that the records are

such as are routinely kept as a part of the business and that the entrant (declarant) is under a duty

to record the items contained in the record, and that the records are maintained accurately in accordance with a custom or routine." Evid.R. 803(6), Staff Note. Additionally, "[t]he proponent of the evidence must show, or the parties must stipulate, that (1) the records were made at or near the time of the event, (2) the records were kept in the ordinary course of business, and (3) the records were made by a person with knowledge." *Lambert*, 79 Ohio App.3d at 27.

{¶ 23} In the case at bar, no party adduced testimony that this particular medical expert's report is routinely kept as a part of the expert's business, that the medical expert is under a duty to record the items contained in his report, and that the records are maintained accurately and in accordance with a custom or routine. Additionally, appellant did not show that the medical expert's report was made at or near the time of the event or that the report was made by someone with knowledge. Thus, even if the medical expert's report arguably could be considered to be a business record, no one authenticated the report. *See generally Smith v. Dillard's Dept. Stores, Inc.*, 8th Dist. Cuyahoga No. 75787, 2000-Ohio-2689, 2000 WL 1867272, *8 (stating that "out-of-court medical opinions or diagnoses contained within an otherwise authenticated medical report or record that satisfies the foundational requirements of Evid.R. 803(6) comes within the ambit of the business record hearsay exception contained in that rule and is admissible unless the opinions or diagnoses violate other evidentiary rules").

{¶ 24} Therefore, we are unable to conclude that the trial court abused its discretion by sustaining the objection to prevent appellant from introducing the medical expert's report. Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II

{¶ 25} In his second assignment of error, appellant asserts that the trial court erred by directing a verdict in appellee's favor. Appellant contends that the trial court incorrectly determined that appellant did not establish a causal relationship between his injuries and the car accident. Appellant recognizes that he did not present expert testimony to establish a causal relationship, but asserts that expert testimony was unnecessary because the casual relationship between a car accident and neck injuries is a matter of common knowledge.

{¶ 26} Civ.R. 50(A)(4) sets forth the standard for granting a directed verdict. The rule provides:

> When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

{¶ 27} A motion for directed verdict presents a question of law. *E.g., Rieger v. Giant Eagle, Inc.*, 157 Ohio St.3d 512, 2019-Ohio-3745, 138 N.E.3d 1121, ¶ 8, citing *White v. Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238, 959 N.E.2d 1033, ¶ 22. "[A] motion for a directed verdict must be denied when 'substantial, competent evidence has been presented from which reasonable minds could draw different conclusions.'" *Kroh v. Continental Gen. Tire, Inc.*, 92 Ohio St.3d 30, 31, 748 N.E.2d 36 (2001), quoting *Kroh v. Continental Gen. Tire, Inc.*, 9th Dist. Summit No. 19412, 1999 WL 1215167 (Dec. 15, 1999). A court may not grant a directed verdict when the record contains sufficient evidence going to all the essential elements of the nonmoving party's case. *E.g., Texler v. D.O. Summers Cleaners*, 81 Ohio St.3d 677, 679, 693 N.E.2d 271 (1998); *Wells v. Miami Valley Hosp.*, 90 Ohio App.3d 840, 631 N.E.2d 642 (1993).

{¶ 28} In ruling upon a motion for a directed verdict, a trial court may not weigh the evidence. *Texler*, 81 Ohio St.3d at 679. Rather, the court must construe the evidence most strongly in favor of the nonmoving party. *E.g., Strother v. Hutchinson*, 67 Ohio St.2d 282, 284, 423 N.E.2d 467 (1981). In construing the evidence most strongly in favor of the nonmoving party, the court must give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence. *Broz v. Winland*, 68 Ohio St.3d 521, 526, 629 N.E.2d 395 (1994); *Blair v. Goff–Kirby Co.*, 49 Ohio St.2d 5, 10, 358 N.E.2d 634 (1976).

{¶ 29} "In order for a personal-injury action to be submitted to a jury, a plaintiff must produce some evidence for each element essential to establish liability." *Rieger* at ¶ 9, citing *Strother*, 67 Ohio St.2d at 285. A successful negligence claim requires a plaintiff to prove four essential elements: (1) the existence of a duty; (2) a breach of duty; (3) proximate causation between the breach and the plaintiff's injuries; and (4) damages. *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 23; *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003–Ohio–2573, 788 N.E.2d 1088, ¶ 8; *Menifee v. Ohio Welding Prod., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). "The failure to prove any one of these elements is fatal to a claim of negligence." *Rieger* at ¶ 10.

{¶ 30} "Liability in negligence is dependent upon the existence of a proximate cause relationship between breach of duty and injury suffered." *Hester v. Dwivedi*, 89 Ohio St.3d 575, 583, 733 N.E.2d 1161 (2000). "Causation requires a factual nexus between the breach and injury (i.e., actual cause) and a significant degree of connectedness that justifies imposing liability (i.e., proximate cause)." *Schirmer v. Mt. Auburn Obstetrics & Gynecologic Assoc., Inc.*, 108 Ohio St.3d 494, 2006–Ohio–942, 844 N.E.2d 1160, ¶ 40, citing *Hester*, 89 Ohio St.3d at

581. "The law of negligence does not hold a defendant liable for damages that the defendant did not cause." *Hester*, 89 Ohio St.3d at 583. Consequently, a proximate relation between a plaintiff's injury and a defendant's negligence is an essential component of a negligence action.

{¶ 31} In *Rieger*, the Ohio Supreme Court explained the causation element of a negligence claim as follows:

> Causation is established using the "but for" test. *Anderson v. St. Francis-St. George Hosp., Inc.*, 77 Ohio St.3d 82, 84-85, 671 N.E.2d 225 (1996). A defendant's conduct is the cause of the harm if the harm would not have occurred but for the defendant's act or failure to act. *Id.*; *see also Renfroe [v. Ashley*, 167 Ohio St. 472, 475, 150 N.E.2d 50 (1958)]; *Strother*, 67 Ohio St.2d at 287, 423 N.E.2d 467. It is not enough for the plaintiff to assert or speculate that the defendant's actions or failure to act might have caused the injury. *Gedra v. Dallmer Co.*, 153 Ohio St. 258, 91 N.E.2d 256 (1950), paragraph two of the syllabus; *accord Krupar v. Procter & Gamble Co.*, 160 Ohio St. 489, 117 N.E.2d 7 (1954), paragraph two of the syllabus. There must be evidence of causation before the plaintiff's negligence claim may be submitted to the jury. *Johnson v. Wal-Mart Stores E., L.P.*, 2014-Ohio-2998, 12 N.E.3d 1262, ¶ 24 (2d Dist.).

*Id.* at ¶ 12.

{¶ 32} Moreover, proving causation between a plaintiff's injuries and the defendant's conduct may require expert testimony. If the cause and effect relationship is "so apparent as to be matters of common knowledge," then expert testimony is unnecessary. *Darnell v. Eastman*, 23 Ohio St.2d 13, 261 N.E.2d 114, syllabus (1970). When, however, "the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry," it "must be established by the opinion of medical witnesses competent to express such opinion." *Id.* A defendant is entitled to judgment as a matter of law if the plaintiff fails to present medical testimony when required. *Id.*

{¶ 33} The causal connection between soft-tissue injuries, such as neck and back injuries,

and an accident typically involve a scientific inquiry. *Lane v. Bur. of Workers' Comp.*, 2nd Dist. Montgomery No. 24618, 2012-Ohio-209, 2012 WL 175418, ¶ 60. These types of injuries are "internal and elusive in nature, unaccompanied by any observable external evidence." *Gibbs v. Gen. Motors Corp.*, 11th Dist. Trumbull No. 3625, 1987 WL 8462, *2; *accord Heard v. Dayton View Commons Homes*, 2nd Dist. No. 27706, 2018-Ohio-606, 106 N.E.3d 327, 2018 WL 921956, ¶ 13; *Davie v. Nationwide Mut. Ins. Co.*, 8th Dist. Cuyahoga No. 101285, 2015-Ohio-104, 2015 WL 179287, ¶ 12. Thus, plaintiffs who seek damages for soft-tissue injuries ordinarily must present expert testimony to establish causation. *Heard* at ¶ 13; *Davie* at ¶ 12; *Lane* at ¶ 60; *Gibbs* at *2.

{¶ 34} In the case sub judice, appellant asserts that the trial court incorrectly determined that appellant's failure to present expert testimony regarding the cause of his injuries was fatal to his case. Appellant contends that it is common knowledge that car accidents cause neck injuries, and that the court should have allowed him to testify as such. To support his argument, appellant cites *State Farm Mut. Auto. Ins. Co. v. Lucas*, 4th Dist. Highland No. 00CA3, 2001-Ohio-2429, 2001 WL 802195. In *Lucas*, this court recognized that a plaintiff ordinarily must present expert testimony to establish the proximate cause of an injury. *Id.* at *4, citing *Darnell v. Eastman*, 23 Ohio St.2d 13, 261 N.E.2d 114 (1970). We further indicated that expert testimony is unnecessary "if the causal relationship is a matter of common knowledge and understanding among laypersons." *Id.* We also observed, however, "some dispute [exists] among Ohio courts as to whether expert testimony is required to establish that an automobile accident is the proximate cause of a neck or back injury." *Id.* at *5, citing *Davis v. D & T Limousine Serv.*, 8th Dist. Nos. 65683 and 66027 (June 16, 1994) (finding cause of shoulder

injury within common knowledge while neck and back injuries required expert testimony);

*Krasienko v. Jarnigan*, 9th Dist. Lorain No. 95CA006098 (Jan. 17, 1996) (finding common

knowledge that rear-end collisions can cause head, neck, and shoulder injuries). We continued:

"In fact, this court has previously held that in a case involving a rear-end collision, 'damages for

subjective injuries occurring without physical contact, such as whiplash, expert testimony as to

causation is required.'" *Id.*, quoting *Mahaffey v. Stenzel*, 4th Dist. Ross No. 97CA2391 (Jan.

25, 1999).

{¶ 35} After reviewing some reasons for the "disparity," this court offered the following

rule:

> It is common knowledge that automobile accidents can cause neck or back injuries. In a rear-end collision in which the lead vehicle sustains heavy damage, it is common knowledge that the occupants of the lead vehicle could sustain neck or back injuries. On the other hand, if there is little or no damage to either vehicle, or if the plaintiff delayed seeking medical attention, then it is more likely that expert testimony is necessary to establish the cause of the plaintiff's injuries. *See Maney v. Jernejcic*, Franklin App. No. 00AP-483 (Nov. 16, 2000).

*Id.* at *5.

{¶ 36} We then determined that under the facts presented in *Lucas*, the plaintiff was not

required to present expert testimony to establish that the car accident was the proximate cause of

her injuries. We, instead, concluded that the evidence presented at trial "constitute[d] some

evidence that the accident was the proximate cause of [the plaintiff's] neck and back problems."

*Id.* We noted that the record contained evidence that (1) the accident caused heavy damage to

the plaintiff's vehicle, (2) the plaintiff "experienced pain in her neck and upper back immediately

after the accident," (3) the plaintiff "did not suffer from neck or back problems prior to the

accident," and (4) the plaintiff "had not suffered any additional injuries to her neck or back since the accident." *Id.* The court found that this collection of facts sufficiently established a causal relationship between the plaintiff's injuries and the car accident.

{¶ 37} In the case at bar, the facts differ from *Lucas*. First, the record does not contain any evidence regarding the extent of damage to appellant's vehicle. Although appellant made a passing comment that appellee hit his vehicle while traveling 40 miles per hour, appellee's counsel objected to the statement and the court sustained the objection.

{¶ 38} We further observe that appellant attached a copy of the accident report to his appellate brief. We again note, however, that we cannot add material to the record that was not presented to the trial court. We therefore are unable to consider the copy of the accident report attached to appellant's brief.

{¶ 39} Also, appellant did testify that he suffered neck pain after the accident, but he further stated that he had neck problems before the accident. The record does not indicate that appellant suffered additional injuries after the accident. We therefore do not believe that *Lucas* controls the outcome of the case at bar.

{¶ 40} Finally, and most important, it must be recognized that *Lucas* has minimal, if any, precedential value in this area of the law. In *Lucas*, two judges concurred in judgment only regarding the common-knowledge exception, not with the content of the opinion. Thus, although a majority of the court agreed with the end result, a majority of the court did not agree with the statements and verbiage regarding the common-knowledge exception. Consequently, *Lucas* does not support appellant's position in this matter.

{¶ 41} Moreover, the vast majority of case law supports the proposition that car accident

plaintiffs who seek damages for neck or back injuries must present expert testimony to establish proximate cause. *Bennett v. Goodremonts, Inc.*, 6th Dist. Lucas No. L-10-1185, 2011-Ohio-1264, 2011 WL 941322, ¶¶ 19-20; *Pinchak v. Prudhomme*, 8th Dist. Cuyahoga No. 94053, 2010-Ohio-3879, 2010 WL 3278958, ¶ 22 (determining that trial court did not err by preventing plaintiff's counsel from mentioning alleged injury during closing argument when plaintiff had not presented expert testimony showing causal link between accident and alleged injury); *Wood v. Estate of Batta*, 8th Dist. Cuyahoga App. No. 90430, 2008–Ohio–1400, 2008 WL 795127 (explaining that the causal connection between neck and back injuries and automobile accidents is not so apparent as to be a matter of common knowledge); *Mahaffey v. Stenzel*, 4th Dist. Ross No. 97CA2391, 1999 WL 50229, *5 (Jan. 25, 1999) ("When plaintiffs seek damages for subjective injuries occurring without physical contact, such as whiplash, expert testimony as to causation is required."); *see also Hodge v. King*, 8th Dist. Cuyahoga No. 72823, 1998 WL 398221 (July 16, 1998); *Davis v. D&T Limousine Serv., Inc.*, 8th Dist. Cuyahoga No. 65683, 1994 WL 264295 (June 16, 1994); *Dolly v. Daugherty*, 8th Dist. Cuyahoga No. 40021, 1979 WL 210671 (Nov. 15, 1979).

**{¶ 42}** In *Bennett*, the court explained that "back and neck injuries require medical testimony to show a causal relationship," because "[t]hese injuries are not normally visible, like a bruise or a break." *Id.* at ¶ 19. Thus, unlike a visible injury such as a bruise or a break, a layperson "cannot ordinarily verify the cause or existence of such injuries in another person." *Id*. Rather, back and neck injuries "fit very neatly into the category of 'internal or elusive injuries.'" *Id.* Consequently, expert testimony ordinarily is required to prove causation between a plaintiff's back or neck injuries and a motor vehicle accident. *Id.*, citing *Chilson v. Conrad*,

11th Dist. No.2005–P–0044, 2006–Ohio–3423, ¶ 25.

{¶ 43} The *Bennett* court also rejected the argument "that injury can be inferred by the fact that [a plaintiff] was in an automobile accident." *Id.* at ¶ 20. The court stated:

> There is no special category for automobile accidents that waives the need to provide expert medical testimony to show causation of injuries. Neck and back injuries suffered in automobile accidents cannot be determined by using the common knowledge standard. Expert medical testimony to show proximate cause is required.

*Id.*, citing *Rogers v. Armstrong*, 1st Dist. No. C–010287, 2002–Ohio–1131, *Mahaffey*, *supra*, and *Langford v. Dean*, 8th Dist. No. 74854 (Sept. 30, 1999).

{¶ 44} In the case sub judice, appellant alleged that an automobile accident caused injury to his neck. Based upon the overwhelming weight of authority, expert testimony is required to establish causation between his neck injury and the automobile accident, especially when appellant had suffered a pre-existing neck injury. We therefore agree with the trial court's determination that appellant failed to establish proximate cause, an essential element of a negligence claim. Furthermore, we note that the trial court also concluded that appellant failed to establish the amount of his damages. Appellant did not challenge this aspect of the trial court's decision.

{¶ 45} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

### III

{¶ 46} In his third assignment of error, appellant asserts that he is entitled to a new trial. Appellant claims that the trial court's decision to exclude the medical expert's report "due to a

technicality of an evidence rule" prevented appellant from obtaining justice.   Appellant asserts

that the rules of evidence should not be applied in a manner that deprives litigants of justice.

{¶ 47} To support his argument, appellant cites a 1917 Ohio Supreme Court decision,

*Kelley v. Hazzard*, 96 Ohio St. 19, 26, 117 N.E. 182 (1917) wherein the court determined that the

doctrine of equitable estoppel did not prevent the appellee from contesting a will.   The court

noted that the appellee brought the will contest action within the statutory time frame and had not

engaged in any conduct to show that she was equitably estopped from contesting the will.   At the

end of its decision, the court also stated:

> The rules of law have as their primal and paramount purpose the working
> out of justice.   If no injustice can result from following a given course, there is
> neither rhyme nor reason in preventing any person from pursuing his statutory
> rights through his statutory remedies.   Certainly when rules of law are
> presumably intended to promote justice no good reason can be given as to why a
> rule of law should be applied to prevent justice.

*Id.* at 26.

{¶ 48} These statements are obiter dicta.   "Obiter dictum" is "'an incidental and

collateral opinion uttered by a judge, and therefore (as not material to his decision or judgment)

not binding.'"   *State ex rel. Gordon v. Barthalow*, 150 Ohio St. 499, 505-506, 83 N.E.2d 393

(1948), quoting Webster's Second New International Dictionary 1679 (1953).   Black's Law

Dictionary defines it as "a judicial comment made while delivering a judicial opinion, but one

that is unnecessary to the decision in the case and therefore not precedential."   Black's Law

Dictionary 1102 (8th Ed.2004).   "'The problem with dicta, and a good reason that it should not

have the force of precedent for later cases, is that when a holding is unnecessary to the outcome

of a case, it may be made with less care and thoroughness than if it were crucial to the

outcome.'" *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 89

(O'Donnell, J., concurring in part and dissenting in part), quoting *Bauer v. Garden City*, 163

Mich.App. 562, 571, 414 N.W.2d 891 (1987).   Courts thus are not required to follow dicta when

the point at issue "was not fully debated."   *Cent. Virginia Community College v. Katz*, 546 U.S.

356, 363, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006); *see also Cosgrove v. Williamsburg of*

*Cincinnati Mgt. Co., Inc.*, 70 Ohio St.3d 281, 284, 638 N.E.2d 991 (1994) (explaining that dicta

has no binding effect on a court's decision in a later case).

{¶ 49} We additionally observe that Evid.R. 102 defines the purpose of Ohio's evidence

rules:

> The purpose of these rules is to provide procedures for the adjudication of causes to the end that the truth may be ascertained and proceedings justly determined.   The principles of the common law of Ohio shall supplement the provisions of these rules, and the rules shall be construed to state the principles of the common law of Ohio unless the rule clearly indicates that a change is intended.   These rules shall not supersede substantive statutory provisions.

Thus, the overall goal of the evidence rules is to help determine the truth and to ensure the

proceedings are justly determined.   Furthermore, we must not "eviscerate" the rules of evidences

"in order to make it easier for" a party to prove its case.   *State v. Dever*, 64 Ohio St.3d 401, 420,

596 N.E.2d 436 (1992) (Wright, J., dissenting).

{¶ 50} Based upon the foregoing principles, we therefore decline appellant's invitation to

disregard Evid.R. 803(6) and its requirements, and to order the trial court to conduct a new trial

so that appellant can introduce the medical expert's report.   As we explained under our

discussion of appellant's first assignment of error, even if the report could arguably qualify as a

business record, appellant did not satisfy the minimum conditions necessary to authenticate the

record.

{¶ 51} At this juncture we wish to offer some observations concerning appellant's decision to appear for trial pro se, or, in other words, to represent himself without the assistance of legal counsel. Although not explicitly mentioned in the United States Constitution, courts readily recognize that any individual is entitled to self-representation in court proceedings if he or she chooses to do so. See, e.g. 28 U.S.C. §1654. However, a pro se litigant will be held to the same legal standard as a licensed attorney and must follow and comply with all pertinent rules, including the rules of evidence and the rules of civil procedure, and all applicable court decisions. Here, even though appellant acted pro se during the trial, once again pro se litigants ordinarily are held to the same rules, procedures, and standards as litigants who are represented by counsel. "'It is well established that pro se litigants are presumed to have knowledge of the law and legal procedures and that they are held to the same standard as litigants who are represented by counsel.'" *State ex rel. Fuller v. Mengel*, 100 Ohio St.3d 352, 800 N.E.2d 25, 2003-Ohio-6448, ¶ 10, quoting *Sabouri v. Ohio Dept. of Job & Family Serv.*, 145 Ohio App.3d 651, 654, 763 N.E.2d 1238 (2001). Consequently, as in this case, a pro se litigant may find himself or herself at a severe disadvantage when attempting to navigate court procedures and present a claim. Unfortunately for appellant, courts may not simply choose to ignore applicable rules. Instead, courts must follow all rules and court decisions, even if the application of a rule or decision could result in negative consequences to any litigant, including a pro se litigant. Furthermore, we recognize that appellant will be displeased with this court's affirmance of the trial court's judgment. In that regard, if appellant believes that this court's decision and judgment is erroneous, he may certainly seek further review with the Ohio Supreme Court and, if

so, we would welcome that review. Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J.: Concurs in Judgment & Opinion
Smith, P.J.: Concurs in Judgment Only

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.